OPINION OF THE COURT
Meyer, J.
Does section 255 of the Family Court Act authorize a Family Court Judge to put into effect a plan allocating responsibilities between the court’s Probation Department and the local Department of Social Services agency with respect to, and establishing standards and procedures in relation to, placement of juvenile delinquents and persons in need of supervision in foster homes, the training of foster parents, supervision of court-placed juveniles, change of placement or of supervision, termination of placement, and providing that "any governmental employee and law guardian shall report to the Court in writing any violation of the provisions of this plan which shall come to his or their attention”, so that proceedings for enforcement may be had? The Appellate Division held that as a matter of law the order made in the instant proceeding exceeded the authority granted by the section. It reversed on the law and the facts and dismissed the order to show cause dated January 23, 1976 by which was begun that part of the proceeding related to the plan, as distinct from the placement of the infant, Lorie C., in relation to which the proceeding originated. The order of the Appellate Division should be affirmed.
Lorie C. was adjudged a person in need of supervision (PINS) and by order of October 15, 1975 was placed in the custody of the St. Lawrence County Department of Social Services and under the supervision of the St. Lawrence County Probation Department with directions to report to her probation officer and to follow his recommendations for counseling. Some difficulty in obtaining a foster home for Lorie was encountered because the Probation Department insisted upon a home in the Massena School District and Social Services had used up its resources in that district. At an informal hearing on December 10, 1976, the court raised the issue whether the program for reserve home accommodations directed in Matter of Edward M (76 Misc 2d 781, affd sub nom. *165 Matter of Murcray, 45 AD2d 906, on later hearing 84 Misc 2d 363) had been implemented. On January 30, 1976 an order to show cause was served on the Department of Social Services. This order, however, referred only to the earlier order in Lorie’s case and only required it to show why an order should not be entered directing it to obtain a suitable foster home for her.
Social Services answered raising the question of the jurisdiction of the court over it and of the power of the court to award custody to it but place supervision of the child with Probation. The court denied Social Services’ motion to dismiss in a decision indicating its intention to continue both the matter and the appointment of the Law Guardian because of its overriding concern that children be promptly placed in foster care.
Prior to March 1, 1976 Lorie was in fact placed. The proceeding was, nevertheless, continued, hearings being held on April 29, 1976, June 2, 1976 and September 7, 1977, preliminary decisions being filed on October 14, 1976 and July 22, 1977, and a final order being entered on November 22, 1977. The Department of Social Services refused to participate in any part of the proceeding after Lorie was placed, its counsel appearing at the September 7, 1977 hearing only to state the department’s position that the court was without power to order the plan. The November 22, 1977 order approved the plan, which is entitled "Court-Ordered Plan Establishing Responsibilities, Standards and Procedures Relating to Juvenile Delinquents and Persons in Need of Supervision Placed in Family Boarding Homes in St. Lawrence County”, and directed that, effective December 1, 1977, it be implemented and followed in all respects by the Probation Department and the Department of Social Services.
The plan required Social Services to identify and certify foster homes and to maintain a reserve of such homes, to train foster parents and certify to Probation the completion of such training, and to supervise children not on probation. It gave Probation responsibility for planning, placement, and supervision of children who were on probation, and directed Social Services not to interfere. It required also that children, parents, governmental employees and Law Guardians report violations, which, the plan and the decision made clear, would be dealt with by contempt citation. As already noted, on appeal by the Department of Social Services, the order of *166 November 22, 1977 was reversed and the order to show cause of January 23, 1976 was dismissed.
We agree with the Appellate Division that the sincerity of the Family Court Judge in attempting to fix responsibilities between Social Services and Probation is beyond doubt. We agree also, however, that the plan he sought by his order of November 22, 1977 to initiate is invalid both because, as the Appellate Division held, it exceeded the authorization contained in section 255 of the Family Court Act and because it encroached upon powers granted by section 398 of the Social Services Law to the Department of Social Services.
Section 255 of the Family Court Act as it read prior to amendment by chapter 470 of the Laws of 1977, was entitled "Cooperation of officials and organizations” and provided: "It is hereby made the duty of, and the family court or a judge thereof may order, any state, county and municipal officer and employee to render such assistance and cooperation as shall be within his legal authority, as may be required, to further the objects of this act. It is hereby made the duty of and the family court or judge thereof may order, any agency or other institution to render such information, assistance and cooperation as shall be within its legal authority concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act. The court is authorized to seek the cooperation of, and may use, within its authorized appropriation therefor, the services of all societies or organizations, public or private, having for their object the protection or aid of children or families, including family counseling services, to the end that the court may be assisted in every reasonable way to give the children and families within its jurisdiction such care, protection and assistance as will best enhance their welfare.”
The section derived from section 56 of the Domestic Relations Court Act and section 37 of the Childrens Court Act, both of which were essentially hortatory. In 1972 the first sentence was amended to insert the words "and the family court or a judge thereof may order, any state” in place of the word "every” and to insert the words "legal authority, as may be required” in place of "jurisdictional power”, and the second sentence was rewritten on essentially similar lines. In 1977 the first sentence was again amended by the insertion between the words "municipal” and "officer” of the words "and school district” and by the addition at the end of the first *167 sentence of the following: "provided, however, that with respect to a school district an order made pursuant to this section shall be limited to requiring the performance of the duties imposed upon the school district and board of education or trustees thereof pursuant to sections forty-four hundred two and forty-four hundred four of the education law, to review, evaluate, recommend, and determine the appropriate special services or programs necessary to meet the needs of a handicapped child, but shall not require the provisions of a specific special service or program, and such order shall be made only where it appears to the court or judge that adequate administrative procedure to require the performance of such duties is not available.”
We have considered the section only twice since its 1972 amendment, once in Matter of Antonio P. (40 NY2d 960) in affirming a holding that it did not authorize an order requiring expungement of police records, and once in Matter of Ellery C. (32 NY2d 588, 591) in a passing reference to the third sentence of the section as supporting the conclusion that confinement of a PINS child in a training school is not permissible. It has, however, been considered a number of times by both Appellate Division and Trial Judges, with varying results. The order sought or made was held not authorized by the section in People ex rel. Thorpe v Clark (62 AD2d 216, 227 [since the section does not expand the court’s legal authority, commitment of a retarded delinquent can only be decreed under the procedures established by the Mental Hygiene Law]); New York City Housing Auth. v Miller (60 AD2d 823, affg on opn below 89 Misc 2d 141 [section does not authorize an order requiring the housing authority, an independent public corporation, to provide immediate housing, since such an order is not one for "information, assistance or cooperation”]); Matter of Currier v Honig (50 AD2d 632 [section does not authorize an ex parte order requiring the county to appoint an additional Assistant County Attorney, which can only be done when authorized by the county legislature]); Matter of Carpenter (94 Misc 2d 908 [section does not authorize order requiring Social Services to pay support for period antedating application]); Matter of Dennis M. (82 Misc 2d 802 [section does not authorize order requiring Commissioner of Social Services to reorganize unit responsible for placement of disturbed children]). On the other hand, the section has been held to authorize an order requiring the State Commissioner *168 of Education to supersede his regulation with respect to contracting with an unregistered school for handicapped children (Matter of Kaye, 54 AD2d 907); to direct the Department of Social Services to file with the court a plan for placement of juveniles in foster care (Matter of Murcray, 45 AD2d 906, supra); to obtain a foster cafe home for two children (Usen v Sipprell, 41 AD2d 251); to obtain a foster home for a PINS child who had been sent to a training school (Matter of Jeanette M., 40 AD2d 977); to require a school district, with the assistance of the Commissioners of Education and Mental Hygiene to locate or develop an educational program for a brain-damaged child (Matter of Loift, 86 Misc 2d 431). The Kaye and Loift holdings have, however, been severely limited by the 1977 amendment of the section and by its decision in the instant case the Appellate Division has indicated that its Murcray holding is limited to orders "directing assistance and co-operation in the exercise of the court’s power and duty in entering dispositional orders” (63 AD2d 1073, 1074).
 With that background in the construction of the section to date, we turn to its language and its legislative history. Of importance in reviewing its language is the fact that its three sentences deal with three separate and distinct situations and that, therefore, each must be considered discretely. Thus, the concluding clause of the third sentence, though phrased in sweeping language, applies only to the situation of the third sentence ("seek the cooperation of * * * all societies or organizations, public or private”) and not to that of the first and second sentences. Those two sentences, which since 1972 have authorized the court to make an order, differ in that the second deals with an agency or institution[1] which has or will have a child under its care, treatment, supervision or custody and permits the Judge to order that "information” as well as "assistance and cooperation” be provided, while the first concerns State, county, municipal and school district officers and employees, permits an order only as to assistance and co-operation and is not expressly limited to relationship to a particular child. Neither, however, spells out the procedure for making such an order, though both limit the order made to (a) one within the legal authority of the person or institution to which it is addressed and (b) one which is required to further the objects of the Family Court Act. The *169 fact that the second sentence is framed in relation to a particular child while the first is not cannot be given much significance in the construction of the section however. This is because the reference to a child in the second sentence is part of the description of the agency or institution. Furthermore, it cannot be supposed, in light of the seven specific categories of actions spelled out in article VI (§ 13, subd b) of the State Constitution and the fact that the Family Court is a court of limited jurisdiction (Matter of Mouscardy v Mouscardy, 63 AD2d 973, 975; Clune v Clune, 57 AD2d 256, 257) that the Legislature intended to vest in the court authority to make general orders of the type involved in this case.
Nothing specific in the legislative history of either the 1972 or the 1977 amendment to the section is helpful in determining the intent behind those amendments. As noted in Matter of Edward M (76 Misc 2d, at p 783, supra), the bill which became chapter 1016 of the Laws of 1972 was introduced by the Speaker after receipt of the report of the Assembly Select Committee on Child Abuse, but that report, while noting in various places the fragmentation of services, made no specific mention of the amendment to section 255. Footnote 12 to the Matter of Edward M decision (76 Misc 2d, at p 785) quotes a letter from the executive director of the Select Committee, which is also reprinted as part of McKinney’s Practice Commentary to the section (McKinney’s Cons Laws of NY, Book 29A, Part 1, p 189), but such a letter, written more than a year after passage of the 1972 amendment and constituting, therefore, no part of the legislative process, is not entitled to consideration as legislative history (Matter of Delmar Box Co. [Aetna Ins. Co.], 309 NY 60, 67). The Governor’s Bill Jacket contains a memorandum from the Department of Social Services which states that section 255 "is amended to require state officers to provide assistance and cooperation to the Court on order of the Court” and questions whether a request would not be more appropriate, together with a statutory requirement that State officials comply with such requests, but nonetheless recommends approval.
The 1977 legislative history is equally sparse. There is only a news memorandum from the Governor concerning the amendments made by chapter 470 to the Education Law, the Family Court Act and chapter 853 of the Laws of 1976 concerning education of handicapped children. That memorandum includes the following concerning section 255 (1977 Mc *170 Kinney’s Session Laws of NY, p 2510): "[T]he Family Court Act is amended to permit the Court to order a school district to perform the review, evaluation and placement obligations imposed upon [sic] by Article 89 of the Education Law where it appears to the Court that a child before it is or may be handicapped. The Court may not, however, require the district to provide a specific service or program and no such order may be made by the Court unless it appears that no adequate administrative procedure is available to obtain evaluation or placement recommendation by the school district.” Since section 4404 of the Education Law requires a school district to furnish suitable educational facilities for handicapped children by special classes, either directly or by contracting with others, the 1977 amendment did no more than exclude from the area of "legal authority” in which an order could be made the making of an order that otherwise would be within it. It was, moreover, consistent with the revisions made by chapter 853 of the Laws of 1976, which had drastically limited Family Court jurisdiction in matters of education of the handicapped in favor of the local school district and the State (see Matter of Pavone, 88 Misc 2d 675).[2]
It follows that, the constitutional limitation imposed by section 13 of article VI aside, the 1977 amendment cannot, therefore, be viewed as a later legislative interpretation enlarging the meaning of the section (cf. McKinney’s Cons Laws of NY, Book 1, Statutes, § 75, p 161). Nor, for several other reasons, can the absence from the first sentence of procedural provisions or of any express limitation to a particular child be interpreted as authorizing an order of the breadth of that made in the instant case.
The first reason is, as the United States Supreme Court recently put it, albeit in a somewhat different context, in Bell v Wolfish (441 US 520, 562), "[Ujnder the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan.” Section 398 (subd 6, par [h]) of the Social Services Law provides that as to destitute, neglected, abused, abandoned, delinquent, and physically handicapped children and children born out of wedlock, the *171 Commissioners of Public Welfare shall supervise those cared for away from their families until such children become 21 years old or are discharged or adopted. The plan here in question, to the contrary, vests supervision of children on probation in the Probation Department and directs that the Department of Social Services not interfere. Though the first sentence of section 255 authorizes an order requiring the doing of an act within the legal authority of the official to whom the order is directed the power to order "assistance and cooperation” cannot be read as permitting an order which denigrates from that officer’s statutory authority, any more than it can be read as expanding such an official’s authority into areas not granted by statute (Matter of Antonio P., 40 NY2d 960, supra; Matter of Currier v Honig, 50 AD2d 632, supra).
 A related but more important reason is the principle several times declared by us in recent years that courts do not normally have overview of the lawful acts of appointive and elective officials involving questions of judgment, discretion, allocation of resources and priorities (Matter of Abrams v New York City Tr. Auth., 39 NY2d 990, 992; accord: Jones v Beame, 45 NY2d 402, 408; Saxton v Carey, 44 NY2d 545, 549; James v Board of Educ., 42 NY2d 357, 368). While, as the Law Guardian argues, that does not necessarily mean that the Legislature may never give such supervisory power to a court, it is familiar law that a statute should be construed so as to avoid doubts concerning its constitutionality (Matter of New York Post Corp. v Leibowitz, 2 NY2d 677, 687; see McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, p 324). Moreover, it is a fundamental of the doctrine of distribution of powers "’that each department should be free from interference, in the discharge of its peculiar duties, by either of the others’” (Saxton v Carey, supra, at p 549, quoting from People ex rel. Burby v Howland, 155 NY 270, 282). To construe the first sentence of section 255 to authorize the Family Court to mandate a plan of administration as sweeping as that here in question would violate that principle.
Finally, we note that the concepts of a court "order” on the one hand and rendering "assistance and cooperation” on the other are to some degree antithetical. We do not find it necessary for purposes of the present case to define exactly what "assistance and cooperation” means in the context of the section. It is sufficient for present purposes to note that a plan *172 requiring conformaiice under penalty of contempt with the responsibilities, standards and procedures it outlines is outside the scope of either the "assistance” or the "cooperation” for which the section provides.
In sum, the court-ordered plan is beyond the authority of the Family Court because it establishes general overview of functions of the Department of Social Services, because it denigrates from the functions allocated by the Legislature to the Department of Social Services, and because in both respects to hold otherwise would raise serious question concerning the constitutionality of the section. This is not, on the present record, to rule out the possibility that, in the proper circumstances, section 255 might empower the Family Court to fashion a remedy that extends beyond the immediate needs of a particular child.
Accordingly, the order of the Appellate Division should be affirmed.

. Cf. Family Court Act (§ 119, subd [a]) as to what that term encompasses.

. Memoranda in the Governor’s Bill Jacket from the Office of Court Administration and the Division of the Budget advised the Governor that the amendment was not a departure from the policy of chapter 853, which largely removed the Family Court from educational matters.