REQUESTED BY: Senator Don Wesely Nebraska State Legislature
Do the provisions in LB 182 providing the juvenile courts with authority to order a specific placement of juveniles committed to the Department of Social Services with costs to be borne by the Department create a constitutional problem?
Yes. In our opinion the provisions would be constitutionally suspect from the standpoint of separation of powers.
This is in response to your request for an opinion concerning the constitutionality of LB 182. You were concerned about the provisions in the bill which allow the Juvenile Courts to order the Department of Social Services to provide specific placement or care to the juveniles who are committed to it and to pay for the costs of all such placement, care, and treatment. You expressed concern about the courts having access to the state treasury and having authority to direct the operations of an executive branch agency.
Section 1 and Section 2(1) provide for a Juvenile Review Panel consisting of three county or juvenile judges appointed by the Supreme Court after a request from a county or separate juvenile court when a court orders a plan different than the plan prepared by the Department of Social Services. Pursuant to Section 5 the panel shall review the disposition of the court de novo on the record. The panel may then modify the court ordered plan, the department's plan, or the probation officer's plan or may substitute the department's plan or probation officer's plan for the court ordered plan and remand the case back to the court with directions to implement such plan. Section 5 provides that review shall not stay the order under consideration, and the order shall be final and binding except that the decision may be appealed.
The Nebraska Supreme Court has already addressed the issue in a similar context. This office represented the Department of Social Services in a successful appeal which resulted in the holding in In Re Interest of G.B., M.B., and T.B., 227 Neb. 512, 418 N.W.2d 258 (1988). In that case the Supreme Court did not find it necessary to rule on the constitutionality of a juvenile court's actions as the court found that the juvenile court was unauthorized to place a child in the Department's custody and then specify placement under Neb.Rev.Stat. § 43-247(3) in its current or present form.
LB 182 seeks to change the authority of the Department over juveniles in its custody. Briefly, the bill will allow juvenile courts to determine development plans for these juveniles. These "court ordered plans" shall be subject to de novo review by a panel of three judges. They may only modify the plan if they find clear, convincing evidence that the plan is not in the juvenile's best interest. Thus, it would appear that this is an amendment to remedy or circumvent the Supreme Court's previous ruling cited above.
This bill raises an issue of separation of powers in light of Scotts v. State ex rel., Board of Nursing, 196 Neb. 682,244 N.W.2d 683 (1976). There the Supreme Court dealt with the statute authorizing the District Court to substitute its own judgment for that of the Board of Nursing concerning the licensing of a nurse. The District Court concluded as a matter of law that the applicant's acts and omissions did not constitute unprofessional conduct, contrary to the Board's finding. The Supreme Court held that the District Court was in violation of separation of powers;
 "A Statute which purports to give the court the power to review an exercise of legislative power de novo in the sense that the court may substitute its own judgment for that of the administrative agency to which the Legislature has appropriately delegated the power is unconstitutional." (p. 688).
Judicial infringement on the executive functions of a Social Services Department was addressed in Lorie C. v. St. Lawrence County Department of Social Services,49 N.Y.2d 161, 400 N.E.2d 336 (1980). There the court ordered plan, although similar to what is authorized under LB 182, was found to be beyond the court's authority "because it establishes general overview of the function of the Department of Social Services, because it denigrates from the functions allocated by the Legislature to the Department of Social Services and because . . . to hold otherwise would raise serious questions concerning the constitutionality of the section" (p. 341). The section in Lorie, supra, authorized the court to do those things necessary in rendering "assistance and cooperation" to the Department of Social Services.
Language from that case is of interest here:
 ". . . the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan. . . ."
A related but more important reason is the principle several times declared by us in recent years that courts do not normally have overview of the lawful acts of appointive and elective officials involving questions of judgment, discretion, allocation of resources and priorities. Id. at 341. Although the language of the section was not as broad as LB 182, the court still sought to substitute its judgment for the judgment of the Department, and the case did address the constitutionality of the act.
The impact of such a function being performed by a court was noted In the Matter of J.J., 431 A.2d 587 (D.C. 8 App. 1981). There the Family Division Court was found to have appropriated the custody and supervision function of the Department of Social Services upon ordering the Department to pay for the juvenile's expenses without placing the juvenile in the Department's custody. The effect would be similar under LB 182 in that the agency would be left "to do nothing more than pay the bills." In doing so the court attempted to combine judicial and administrative roles, that under our tripartite system of government, must be kept "separate" (p. 593). It would follow that this reasoning would militate against such court ordered plans of service, treatment, and placement.
Although LB 182 does remove specific authority from the Department in regard to placement and treatment the fact remains that the Department is the principal resource alternative of the juvenile courts. The Department is charged with the responsibility of funding the placement and treatment of each child committed to it. This is an executive function that is limited by the proposed legislation. It would appear to us that the practical result would be the judicial branch actually making discretionary decisions for an executive agency and would, therefore, be suspect under the Constitution of the United States and the Nebraska Constitution.
Sincerely,
ROBERT M. SPIRE Attorney General
A. Eugene Crump Deputy Attorney General