OPINION OF THE COURT
Raymond E. Cornelius, J.
The Director of the Monroe County Department of Social Services, the petitioner herein, has made an application for an *377 order directing the natural and prospective adoptive parents of the above-named child to show cause why the court should not approve and authorize a "Do Not Resuscitate” (DNR) order. On December 12, 1991, both parents appeared before a Family Court Judge and executed instruments, whereby they voluntarily surrendered guardianship and custody of their child to the Monroe County Department of Social Services, which is an agency authorized to receive children for the purposes of adoption. (Domestic Relations Law § 109 [4]; Social Services Law § 371 [10].) The fact that this was a "judicial surrender” resulted in the instrument being final and irrevocable as of the time of its execution and acknowledgement. (See, Social Services Law § 383-c [3] [b]; [5] [c].) Nevertheless, the surrender was conditioned upon adoption by a maternal aunt, and provided that in the event that she did not adopt the child, "this surrender instrument shall be null and void.” As of this date, there has been insufficient time for the maternal aunt to process and finalize the adoption.
At the time of the pending application, the child was hospitalized at Strong Memorial Hospital with Acquired Immune Deficiency Syndrome (AIDS) and was terminally ill. According to the affidavit of the medical director of foster care pediatrics at the hospital, the child was experiencing multiple medical problems, including an enlarged heart and liver and metastatic cancer. In the opinion of this physician, as well as the child’s attending physician, cardiopulmonary resuscitation would be "medically futile”, and would result in further unnecessary suffering. Both physicians recommended that a DNR order be implemented. In addition, on January 8, 1992, the maternal aunt, who is the prospective adoptive parent, signed a consent for the attending physician to issue a DNR order.
The petitioner asserts that this application was not made to the Family Court because of that court’s limited jurisdiction, consisting only of such powers as specifically granted by the Constitution or the statutes of the State. (NY Const, art VI, § 13 [b], [c]; Matter of Lorie C, 49 NY2d 161 [1980].) Furthermore, the petitioner takes the position that, as Director of the Department of Social Services, he has authority to consent to a DNR order based upon the aforementioned surrender instruments. However, he also acknowledges that questions might arise concerning the validity of the surrender instruments because, among other reasons, of the failure to specify a time limitation for finalization of the adoption.
*378 This court would certainly agree that petitioner, as guardian, does possess authority to consent, on behalf of the minor patient, to a DNR order. (Public Health Law §2967 [1], [2].) However, the court also recognizes that the validity of any guardianship may be called into question, whether based upon the validity of surrender instruments, executed pursuant to Social Services Law § 383-c or 384, or permanent termination of parental rights, under Social Services Law § 384-b. Furthermore, although any person, whose consent is required for a DNR order, is statutorily granted immunity from criminal prosecution or civil liability, such immunity is not absolute, but rather limited to a "good-faith” consent or declination to consent to the order. (Public Health Law § 2974 [3].)
The procedure, set forth under article 29-B of the Public Health Law, for issuance of a DNR order on behalf of a minor patient, consists essentially of the following six steps:
1. "An attending physician, in consultation with the minor’s parent or legal guardian, shall determine whether a minor has the capacity to make a decision regarding resuscitation.” (Public Health Law § 2967 [1].)
2. A written determination is made by the attending physician, with the written concurrence of another physician after an examination of the patient, that "to a reasonable degree of medical certainty,” the minor patient suffers from a "terminal condition”, or is "permanently unconscious”, or "resuscitation would be medically futile”, or that "resuscitation would impose an extraordinary burden on the patient” based upon the medical condition and expected outcome of the resuscitation. (Public Health Law § 2965 [3] [c] [i]-[iv]; § 2967 [3].)
3. The attending physician "shall provide to the person giving consent information about the patient’s diagnosis and prognosis, the reasonably foreseeable risks and benefits of cardiopulmonary resuscitation for the patient, and the consequences of an order not to resuscitate.” (Public Health Law § 2962 [3].)
4. Consent by the parent or legal guardian, but only after a consideration by such person of the "minor patient’s wishes, including a consideration of the minor patient’s religious and moral beliefs”. (Public Health Law §2967 [2], [3], [4].) The decision to consent must be either in writing, dated and signed in the presence of a witness or expressed orally to two witnesses, at least one of whom is a physician affiliated with the hospital in which the minor patient is being treated. (Public Health Law § 2967 [4].)
*379 5. The parent or legal guardian’s consent to a DNR order must be recorded in the minor patient’s medical chart. (Public Health Law § 2967 [4].)
6. The attending physician promptly issues a DNR order and informs the hospital staff responsible for the care of the patient. (Public Health Law § 2967 [4] [b]; § 2965 [4] [b] [i].) The DNR order must be then included in writing in the patient’s chart. (Public Health Law § 2962 [2].)
The statute does provide for a judicial review of a DNR order, but only for purposes of resolving a "dispute”, upon application by certain named parties, including a parent or legal guardian. (Public Health Law § 2973 [1].)
There is provision, in Public Health Law § 2972, for a dispute mediation system to resolve "disputes”, and an attending physician, who "has actual notice of the opposition of a parent or non-custodial parent to consent by another parent to an order not to resuscitate a minor * * * shall submit the matter to the dispute mediation system”. (Public Health Law § 2967 [4] [c].) However, "no such proceeding shall be commenced until the dispute mediation system has concluded its efforts to resolve the dispute or seventy-two hours have elapsed from the submission of the dispute to the dispute mediation system, whichever shall occur first, provided, however, that the patient may commence an action for relief with respect to any dispute under this article at any time and provided further that the department of health or any other duly authorized state agency may commence an action or proceeding to enjoin a violation of this article at any time.” (Public Health Law § 2973 [3].) Thus, the statutory scheme envisions judicial review of a "dispute”, and generally, only after submission to the dispute mediation system. In the pending case, the child certainly cannot independently commence a proceeding, and there is no "dispute” because no one has challenged the order.*
In addition to the foregoing, the statute requires someone *380 challenging a DNR order to establish, by clear and convincing evidence, that such an order is contrary to the best interests of the patient. (Public Health Law § 2973 [1].) In such a proceeding, the court may issue a temporary restraining order, pursuant to CPLR 6313, suspending the DNR order pending review by the court. (Public Health Law § 2973 [2].) The statute expressly precludes such an application, however, for judicial review of a decision not to consent to a DNR order. (Public Health Law § 2973 [1].)
Although there is no provision expressly authorizing judicial review for court approval of a DNR order, which does not involve a "dispute”, section 2976 (2) of the Public Health Law provides as follows: "Nothing in this article shall be construed to preclude a court of competent jurisdiction from approving the issuance of an order not to resuscitate under circumstances other than those under which such an order may be issued pursuant to this article.” Notwithstanding this provision, there is no authorization for a court to approve, in advance, either a parent or guardian’s consent to a DNR order or the actual issuance of such an order by the attending physician, whether in regard to an adult having capacity or a minor patient. In contrast, there is express authorization for such an application and order in the case of an adult patient, who lacks capacity and who has not previously expressed a decision regarding cardiopulmonary resuscitation, and there is no Surrogate "reasonably available.” (Public Health Law § 2976 [1].)
Based upon the aforementioned statutory provisions, this court has concluded that it lacks authority to grant an order, in advance, approving the issuance of a DNR order for either an adult, who does not lack capacity, or a minor, and accordingly, declines to sign the proposed order to show cause. Conversely, the court would interpret section 2976 (2) of the Public Health Law, as providing the court authority to approve a DNR order, but only after issuance of such an order. As outlined above, there are certain procedural steps necessary before an attending physician issues such an order. In the pending case, a DNR order had not been issued at the time of the application, and furthermore, it is not altogether clear from the supporting papers that there has been full *381 compliance with the steps necessary before issuance of such an order. Although the court declines to sign the order to show cause, this decision is without prejudice to a reapplication based upon proof of compliance with the statute, including, but not limited, to the issuance of a DNR order.

 The State Executive Department, at the time article 29 was enacted, indicated that this section authorizes "the patient, physicians, surrogates, parents and the hospital” to seek judicial relief, but only after review by the dispute mediation system or the lapse of 72 hours, and that the "patient” may seek judicial relief at any time. (Mem of State Exec Dept, 1987 McKinney’s Session Laws of NY, at 2573.) Thus, there remains a question whether a "guardian” may also be required to submit to the jurisdiction of the dispute mediation system, rather than seek judicial review, in the first instance.