*393 OPINION OF THE COURT
Stephen J. Bogacz, J.
The court in this termination of parental rights case is presiding over a second dispositional hearing, as ordered upon remand by the Appellate Division. (Matter of Tiffany A., 242 AD2d 709.) This new hearing is at once expedited and protracted, given the multiplicity of the issues being litigated. The child who is the subject of this proceeding had been in continuous foster care placement between July 1992 and August 1999. At that time, the Administration for Children’s Services (hereinafter ACS) determined not to file a petition to further extend that foster care placement. Three applications are now pending before the court as a result of ACS’ decision.
The Law Guardian moves this court to direct ACS to file a de novo child neglect petition under Family Court Act article 10, in light of the lapsed placement that resulted from the ACS determination. The Law Guardian makes this application in order to, inter alia, maintain the status quo of the child’s court-ordered living arrangements[1] pending the final disposition of the instant termination case.
The respondent mother asks this court to vacate the intervener status that was granted to the then-foster parents at the commencement of the original dispositional hearing in this matter. The respondent mother seeks this relief since the ACS determination of August 1999 renders the current legal status of the intervenors to be that of former foster parents.
Lastly, the intervenors move this court for leave to file a custody petition regarding the subject child. They make this application essentially on a contingency basis, i.e., only in the event that the court grants the respondent mother’s motion to vacate their status as intervenors.
The Law Guardian’s motion to compel the filing of a new child neglect petition emanates directly from her suggested in *394 terpretation of Family Court Act § 1032 (b). It also clearly implicates Family Court Act § 255, and raises constitutional concerns relating to the separation of powers between the executive branch of government and the judiciary. The motion must be denied when scrutinized under each of these considerations.
Simply put, the Law Guardian asks this court to view ACS as a “person” within the purview of Family Court Act § 1032 (b), which authorizes “a person on the court’s direction” to originate a child protective petition. (Emphasis added.) To reach this conclusion, however, the court would have to ignore the plain language of Family Court Act § 1032 (a) and § 1034. The former section specifically addresses the statutory authority of ACS, as a child protective agency, to originate a child neglect or abuse petition under Family Court Act article 10. ACS is specifically authorized to file such a petition without first seeking leave of court to do so. (Family Court Act § 1032 [a]; Social Services Law § 424.) The latter section, Family Court Act § 1034, grants the court the direct authority to order ACS to conduct an investigation of particular allegations of child abuse and/or neglect, as a prelude to a determination by ACS as to whether a child protective petition ought to be filed.[2]
Given the unambiguous context of Family Court Act § 1032 (a) and § 1034, it is clear that a child protective agency cannot be included in the class of “persons” covered by Family Court Act § 1032 (b). This section was in fact enacted for a very different purpose: to create a requirement for prior court approval before anyone who is not a child protective agency is permitted to file such a petition.[3] It may not be construed to provide the court with a basis for exercising the executive’s *395 prerogative. Indeed, nothing in the extensive legislative history of Family Court Act § 1032 even indirectly supports the Law Guardian’s analysis. (See, Matter of Weber v Stony Brook Hosp., 60 NY2d 208 [1983].) In any event, this court need not reach the issue of the statutory construction of Family Court Act § 1032 (b). Even if the court were to adopt the Law Guardian’s reasoning, the granting of the relief sought would clearly violate the separation of powers doctrine. Such a result thereby renders the Law Guardian’s analysis as constitutionally infirm.
The Law Guardian’s interpretation of Family Court Act § 1032 (b) also lacks support in the case law. While Family Court Act § 1034 clearly enables the Family Court to direct that ACS undertake an investigation with respect to possible child neglect or abuse, the issuance of such an order also marks the outer limit of the court’s authority in this regard. Indeed, the Second Department has clearly held that this statute does not also empower the Family Court to direct the manner in which such an investigation is to be carried out. (Matter of Zena O., 212 AD2d 712 [2d Dept 1995].) Analogously, the Family Court may not similarly direct the outcome of such an investigation, i.e., a finding that a sufficient basis exists to file a child protective petition under article 10. (See, Matter of Mary AA., 175 AD2d 362 [3d Dept 1991].) The conduct of and ultimate conclusion drawn from an investigation that is ordered pursuant to Family Court Act § 1034 must therefore remain squarely within the domain of the executive, i.e., ACS.
The court must also assess the Law Guardian’s application in the context of Family Court Act § 255. This section empowers the Family Court to order any State, county, or municipal employee to render assistance and cooperation to the court, so long as the ordered assistance and cooperation are within his/ her legal authority to provide. It further authorizes the Family Court to seek the cooperation of all public and private organizations that protect or aid children or families. It is designed to provide the court with a measure of both flexibility and potency in dealing with bureaucratic inattention to lawful court orders. While the language of Family Court Act § 255 is rather broad, its limitations have been clearly defined in the case law.
First, an order made pursuant to Family Court Act § 255 may not encroach upon powers that are specifically granted to *396 an executive agency by statute. (Matter of Lorie C., 49 NY2d 161 [1980].) In the instant matter, Social Services Law § 424 specifically empowers a child protective service, which ACS is, to investigate and evaluate allegations of possible child neglect and abuse, and to make a determination to initiate proceedings in Family Court where appropriate, in the exercise of its judgment and discretion. Additionally, 18 NYCRR 432.2 further denominates such a child protective service as the sole organizational entity designated as responsible for same.
Second, courts do not normally enjoy overview power with respect to the lawful acts of appointive and elected officials involving questions of judgment, discretion, allocation of resources and priorities. (Matter of Lorie C., supra, 49 NY2d, at 171.)[4]
Third, a court may not substitute its own judgment and discretion for that of a duly authorized executive agency. (Matter of Hasani B., 195 AD2d 404 [1st Dept 1993].)
Finally, the authority granted to the Family Court pursuant to Family Court Act § 255 does not extend to the issuance of an order directing ACS to take specific legal action. (Matter of Enrique R., 126 AD2d 169 [1st Dept 1987].) The filing of a child protective petition would constitute just the sort of “specific legal action” of which the First Department disapproved in Enrique R.
In assessing the motion in the context of the above case law, the requested relief runs afoul of each of the recognized principles articulated therein. The Law Guardian’s application is thereupon denied. Such an unambiguous usurpation of the executive function is unsupported by any reasonable interpretation of Family Court Act § 255.
The court must also scrutinize the Law Guardian’s motion under the doctrine of the separation of powers among the executive, legislative and judicial branches of government. It is well settled that none of the three are subordinate, but that all are coordinate, independent and coequal. (Humphrey’s Ex’r v United States, 295 US 602 [1935].) In that landmark decision, Justice Sutherland sagely observed that “[t]he sound applica *397 tion of a principle that makes one master in his own house precludes him from imposing his control in the house of another who is master there.” (295 US, at 630.) It is therefore a fundamental precept of the separation of powers doctrine that each branch of government be free from interference by either of the others in the discharge of its peculiar duties. (Matter of Lorie C., supra, at 171.) Indeed, under our Constitution, the first question to be answered, in assessing a possible violation of the separation of powers, is not whose plan is best, but in which branch of government is lodged the authority to initially devise the plan. (Bell v Wolfish, 441 US 520 [1979]; Matter of Lorie C., supra, at 170.)
Within this circumstance, the judicial branch does enjoy certain limited authority with respect to the executive branch. A court may order that an executive agency perform its statutorily mandated duties.[5] Such mandamus-type relief, however, is available only to compel the performance of a non-discretionary, ministerial duty. (Matter of Cohalan v Caputo, 94 AD2d 742 [2d Dept 1983]; State v Pena, 911 P2d 48 [Colo Sup Ct 1996].) Questions that pertain to the executive’s judgment, discretion, allocation of resources and priorities are inappropriate for resolution in the judicial arena. (Klostermann v Cuomo, 61 NY2d 525 [1984]; Jones v Beame, 45 NY2d 402 [1978].)
When addressing controversies regarding executive judgment and discretion, not only is the situs of responsibility elsewhere (than in the courts), but the judicial process itself is neither designed nor intended to assume the management and operation of an executive enterprise. (Jones v Beame, supra, 45 NY2d, at 408.) Courts are simply not so organized as to enable them to conveniently assume a general supervisory power over acts that result from the exercise of executive judgment.[6] Assumption of such authority, even if it could be facilitated, *398 would, in any event, run contrary to the entire spirit and intent of our government. (45 NY2d, at 408.)[7]
It is therefore not within the purview of the court to lay out specific action within an admitted area of executive power. (Haydon v Proskauer, 281 App Div 483 [1st Dept 1953].) A court may not properly exercise a function of the executive branch of government. Judicial authority in this regard effectively begins and ends with the limited power to order the executive to do what it has a legal obligation to do.[8] When the means of fulfilling that legal obligation lie within the discretion of an executive agency, the court normally has no right to instruct that agency as to how to meet its duty. (Care & Protection of Isaac, 419 Mass 602, 646 NE2d 1034 [1995]; Villines v Lee, 321 Ark 405, 902 SW2d 233 [1995].)
Applying these principles and the applicable statutes to the case at bar, the court finds as follows. ACS has a statutory obligation to investigate allegations of child abuse and/or neglect. (Social Services Law § 424; 18 NYCRR 432.2.) The initiation of such an investigation constitutes a nondiscretionary, ministerial act. The manner in which such an investigation is carried out, however, lies exclusively within the province of ACS’ discretion. Several possible outcomes may result from the conducting of such an investigation, including but not limited *399 to the initiation of a child protective proceeding in the Family Court. ACS’ exercise of its statutory authority and judgment determines which of these possible consequences are acted upon. Since both the scope and the effect of an ACS probe are clearly ensconced within the executive purview, this court simply lacks the authority to order a particular outcome, i.e., a finding that sufficient evidence exists to file a child protective petition.[9] For all of the foregoing reasons, the Law Guardian’s motion is denied in its entirety.
The exercise of the executive prerogative by ACS in the case at bar, in deciding not to seek an extension of the subject child’s foster care placement, also provides the underlying basis for the respondent mother’s application to vacate the intervenor status of the now-former foster parents. When their motion to intervene was duly granted at the commencement of the original dispositional hearing, the court’s decision to do so clearly comported with a statutory mandate that has also been recognized in the case law.
By January 20, 1995, when the subject child’s then-current foster parents intervened, they had been her foster parents since July 1992, a period well in excess of the statutorily required 12 months. Both statutory criteria that were required as a condition precedent to the granting of intervenor status were thus fulfilled. (Social Services Law § 383 [3].) The application to permit their intervention was thereupon properly *400 granted by the court. (Matter of Michael W., 120 AD2d 87 [4th Dept 1986]; Matter of Stevens, 51 AD2d 877 [4th Dept 1976].) The intervenors then fully participated in the original dispositional hearing. Indeed, the presiding Judge at that hearing properly recognized early on that since both ACS and its contract agency were each supporting a return of the subject child to the respondent mother, the intervening foster parents (with the support of the Law Guardian) had the burden of going forward with the evidence in support of terminating the mother’s parental rights.
The Second Department ultimately reversed that original disposition, which dismissed the petition, and remanded the matter for a new dispositional hearing, which is now in progress before this court. From the outset of this second dispositional hearing, the intervening foster parents have again fully participated, once again presenting evidence in support of terminating the respondent mother’s parental rights. By stipulation on consent, the testimony from the first dispositional hearing has been formally incorporated into the current hearing. The combined testimony now in evidence before this court has exceeded 5,000 pages of transcripts, derived from testimony that was taken on almost 60 hearing days. Now the court is being asked to essentially remove the intervenors from this hearing at literally the eleventh hour.
This application, an apparent case of first impression, must be denied. The equities present in this case permit no other result. The intervenors have not only actively participated in both dispositional hearings, they have functioned as lead participants. They have been the child’s foster parents from 1992 until August 1999, and she continues to spend every weekend with them. They also remain the child’s preadoptive resource, should the court determine at the conclusion of this hearing that termination of her mother’s parental rights would be in this child’s best interests. The First Department has recently decided that a petition seeking to terminate parental rights may proceed despite the fact that it is instituted subsequent to a subject child’s foster care placement having lapsed. (Matter of Tisnique B., 245 AD2d 152 [1st Dept 1997].) Analogously, given the extensive history of this case, the intervenor status of the now-former foster parents, properly *401 granted and maintained for 4V2 years, may continue despite the recent lapsed placement herein.[10]
The court, based upon this denial of the respondent mother’s motion, need not reach the intervenors’ contingent application seeking leave to file a petition for custody of the subject child.[11]

. Since September 1995, during the pendency of the original dispositional hearing, the subject child has resided with the respondent mother between Monday morning and Friday afternoon each week, and with the intervenors from Friday afternoon until Monday morning each week. When the Appellate Division remanded the matter to this court for a new dispositional hearing, this court denied a motion made by the intervenors to essentially reverse the arrangement, i.e., to permit the child to reside with the intervenors during the week and with the respondent mother on weekends. At that time, this court opted for maintaining stability in the life of a young child who had already experienced a great deal of turmoil, and denied that application. The status quo has been thereupon preserved during the pendency of this second dispositional hearing.

. It is not necessary for the court to order such an investigation in the instant matter. ACS is thoroughly familiar with all of the relevant facts and circumstances, having supervised this case for seven years. ACS has indeed already completed such an “investigation” over that time, and has reached a determination, in the exercise of its executive discretion, that no facts currently exist to justify the filing of a de novo child neglect petition. This position is unambiguously set forth in the “sixty day closing report” of October 7, 1999 that is attached to the Commissioner’s affirmation in opposition to the Law Guardian’s motion.

. The legislative history which underlies this section clearly anticipates that the “person” seeking to file such a petition “at the court’s direction” will first make application to the court for that instruction. There is no expectation in that legislative history that a third party would, or could, make an application to the court to compel such a “person” to bring the petition. Even if, assuming arguendo, the court is empowered under Family Court Act § 1032 (b) to order ACS to file a de novo child protective petition, no authority exists for the court to compel ACS to proceed on that same petition, and *395 indeed ACS has already decided that the requisite proof to support such a petition is lacking.

. If this court were to construe Family Court Act § 255 as granting such a supervisory power to the Family Court, as it necessarily must if the Law Guardian’s motion is to be granted, it would thereupon raise substantial concerns regarding its constitutionality. It is a settled rule of statutory construction that in precisely such a situation, a statute must be construed as to avoid doubts regarding its constitutionality. (McKinney’s Cons Laws of NY, Book 1, Statutes § 150.)

. For example, the Family Court has the authority to order ACS to investigate specific allegations of child abuse or neglect even in the absence of Family Court Act § 1034, since ACS is statutorily compelled to undertake such an investigation.

. The myriad factors that must be weighed by a responsible executive when reaching an informed decision, including but not limited to specific factual information, the source(s) thereof, and the appropriate weight to be afforded to those source(s), cannot be meaningfully duplicated in the courtroom, however diligent and thorough a Judge tries to be. This, of course, reflects the wisdom of the founders in organizing the three branches of government, and in recognizing that such responsibility lies in the executive branch in the first instance.

. A philosophy that encourages Judges to assume an activist role in court proceedings relating to families is gaining national attention. Such judicial activism may properly and responsibly assure that the executive branch carry out its legal obligations. The judiciary must never usurp the executive’s authority, however, even in an effort to improve the outcome of a particular case, or class of cases.
Judges must always be mindful of the peril of substituting the court’s judgment for the executive’s discretion. The temptation to do so markedly increases when a court employs a hands-on approach to its case load. It becomes facile to overlook or even to ignore a fundamental tenet of our constitutional framework: the judiciary may not encroach upon the executive prerogative. This principle is inviolate, however honorable the judicial intention and however salutary the desired result. The Family Court remains as always a court of law, subject to all constitutional safeguards, including the separation of powers doctrine.
Under our governmental scheme, it is well settled that the judicial branch cannot replace the executive’s judgment with its own, so long as the executive has acted lawfully. Only the public may review the efficacy of the executive’s exercise of judgment and discretion. The electorate enjoys the exclusive province to express its dissatisfaction with an executive whose performance is found wanting by virtue of exercising that discretion poorly.

. Parenthetically, the court also is empowered to prevent the executive from undertaking functions that exceed its lawful authority. The preclusion of such ultra vires activity may be directed by a court. Historically, such an order is classified as a writ of prohibition.

. It is noteworthy that Family Court Act § 1055 (d) does specifically empower the Family Court to direct a “social services official or other duly authorized agency to institute a proceeding to legally free [a] child for adoption,” i.e., to initiate a petition to terminate parental rights, if the court first finds “reasonable cause” to do so. In contrasting this section with Family Court Act § 1032 (b), it is clear that such specific statutory direction is not present in the latter section. Under the rules of statutory construction, this court must presume that the Legislature intended to enact that which it enacted, and intended to omit that which it omitted. (McKinney’s Cons Laws of NY, Book 1, Statutes § 74.) In any event, Family Court Act § 1055 (d) is arguably of dubious constitutionality, when subjected to the separation of powers analysis detailed previously. It is additionally obvious that even if the Legislature properly granted such authority to the Family Court (to order the filing of a petition to terminate parental rights), it did not concomitantly grant the court the power to order the executive to proceed on such a petition. Such authority is unknown anywhere in the law, as, e.g., a court may not direct a prosecutor as to whether or how to proceed on a criminal matter. The court simply provides the opportunity for the presentation of a case, and may impose appropriate consequences (up to and including possible dismissal of the case) if that opportunity is declined for whatever reason. A Judge may not, however, order a plaintiff/petitioner/prosecutor to go forward on a case which it has decided not to present.

. This denial of the motion to vacate the intervener status of the former foster parents also results in maintaining the status quo of the subject child’s current living arrangements. The court continues to direct that she reside with the intervenors from Friday afternoon through Monday morning, each week. The court again relies, as parens patriae, on the overriding need to keep this child’s life as stable as possible pending the final disposition in this case. Indeed, the court had previously denied an application to expand the intervenors’ time with the child, even after the Second Department stated, in reversing the original dispositional order, that upon the record presented in that hearing, it would have terminated the respondent mother’s parental rights. The identical concerns which informed the denial of the intervenors’ application at that time also underlie the court’s instant decision.

. This application of course, raises an interesting question. On one hand, the law is well settled that foster parents lack standing to file a custody petition. (See, e.g., Matter of New York City Dept. of Social Servs. [Tahira L.], 203 AD2d 575 [2d Dept 1994]; Matter of Rivers v Womack, 178 AD2d 532 [2d Dept 1991]; Katie B. v Miriam H., 116 AD2d 545 [2d Dept 1986]; Matter of Byers v Kirby, 67 AD2d 727 [2d Dept 1979].) On the other hand, the intervenors’ legal status is now that of former foster parents, which arguably removes them from coverage by that body of settled law. Indeed, it is arguable that they might be able to at least file a petition seeking guardianship of the subject child. (See, Matter of Dalida P., 204 AD2d 645 [2d Dept 1994] [wherein the Second Department noted that a guardianship proceeding may be brought by “any person” and does not require that the petitioner have a blood or marriage relationship to the child in question].) In any event, given the denial of the respondent mother’s motion, it remains a moot issue in the context of the instant matter.