In the Matter of ENRIQUE R. COMMISSIONER OF SOCIAL SER-
VICES OF THE CITY OF NEW YORK, Appellant; GLADYS T.,
Respondent.

First Department, March 19, 1987

**APPEARANCES OF COUNSEL**

*Marvin R. Kwartler* of counsel *(June A. Witterschein* with

him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Elfreda G. Brownstein* for respondent.

*Jean Koh Peters (Timon Marshall* and *Nina Brooks* with her on the brief), *Law Guardian.*

## OPINION OF THE COURT

KASSAL, J.

May the Family Court, within the statutory power conferred by Family Court Act § 255 ("Cooperation of officials and organizations"), direct the Commissioner of Social Services (Commissioner) to commence a CPLR article 78 proceeding against the New York City Housing Authority (Authority) on the basis that adequate housing is needed to enable a child's grandmother to obtain custody of her grandchild? While we deeply sympathize with the plight of the child's grandmother, who has been unreasonably thwarted in securing proper housing, basically as a result of bureaucratic red tape incident to Housing Authority procedures, and the inaction, bordering on irresponsibility, of the Authority, we conclude, nevertheless, that the order to that extent exceeds the statutory jurisdiction of the Family Court.

The proceeding was brought to review the status of Enrique R., a seven-year-old child, born on September 13, 1979. He was placed in foster care on a voluntary basis by his maternal grandmother on August 28, 1981. After having been briefly discharged to his paternal grandfather, he was returned to foster care on December 15, 1981, and remains to the present in such status, with regular overnight weekend visits with his paternal grandmother, Gladys Torres. She is the only blood relative willing to assume permanent custody and provide the child with a stable home environment and she earnestly seeks this. All parties have consented to this proposed arrangement, including the child's parents, the Law Guardian and the agency to which the Commissioner had assigned custody, McMahon Services for Children (McMahon). Although the agency had originally petitioned to terminate parental rights in order to free the child for adoption, the application was denied and foster care continued to permit formulation of a plan so that Enrique would be discharged to the custody of his paternal grandmother. The Law Guardian concluded that this was in the child's best interests.

It is conceded that the sole obstacle to the child's immediate discharge to his grandmother is the inadequacy of her apartment at 58 East 1st Street in Manhattan, where she resides with her adult and infant daughters, in an apartment which allegedly amounts to a health hazard and is too small for occupancy by an additional child. It is claimed, without dispute, that the four-room apartment will not accommodate another bed and the building is infested with rats, mice and roaches, to such an extent that, in November 1984, Mrs. Torres' youngest daughter was treated for skin lesions from roach bites. It is further asserted that the absence of heat and hot water during the winter months is unbearable and, at times, has prevented Enrique from making his regular visits to his grandmother. Mrs. Torres' inability to obtain adequate housing, it is alleged, is enhanced by her status as a welfare recipient and her need to remain in lower Manhattan, where other family members also live and provide a support network.

Unfortunately, there are long waiting lists for public housing. Mrs. Torres first applied for public housing in November 1980 but was not informed by the Housing Authority that she was on a waiting list until March 1984, 3½ years later. Although, under Authority regulations, she did not fall within a category of applicants eligible for "priority" treatment, she was, nevertheless, told that her application would be marked "Rush" for humanitarian and health reasons. In May 1984, Mrs. Torres was again advised by the Authority that she was still on the waiting list for the LaGuardia Project but, later that month, she was told that her name was not on the list. The project's assistant manager speculated that her application may have been inadvertently sent to the wrong project. The Housing Authority did, however, acknowledge that her application was on file but requested that she update it, with an updated application being filed August 1, 1984. One week later, McMahon's investigator inquired about an empty apartment for Mrs. Torres at Columbia Houses, but it had already been taken and the investigator was told that Mrs. Torres was not on the waiting list. Later that month, the Authority's central office once again acknowledged that Mrs. Torres was on the list but that there was a five-year waiting period.

Having had no success in obtaining either public or private housing for Mrs. Torres, the Law Guardian, in October 1984, applied to the Family Court. The court ordered the Authority, the Commissioner and McMahon to lend assistance in "finding

an apartment, preferably in the Lower East Side," and directed that Enrique be discharged to Mrs. Torres within four weeks after a suitable apartment was obtained (order, Sheldon Rand, J., entered Oct. 29, 1984). On January 3, 1985, an agency social worker was advised by the Authority's attorney assigned to the case that there was nothing he could do and that Authority records reflected that Mrs. Torres had first submitted an application in July 1984, with no record of any prior application. Upon further request by the agency and the Law Guardian for clarification of Mrs. Torres' status, the Authority, on February 6, 1985, advised that her Social Security number no longer appeared in its computer file and, as a result, on February 8th, Mrs. Torres agreed to file a third housing application. When the Law Guardian contacted the Authority on February 14th, the Authority again stated that there was no computer record of any application, new or old, and that accidental erasures were not uncommon.

With this extensive history of misfeasance and nonfeasance in the processing of the application by the Authority, the matter again came before the Family Court in September 1985 for a further review of Enrique's foster care status. Although the prior order had directed the Authority to provide assistance in obtaining suitable housing, it appears that nothing was done toward that end and no Authority attorney appeared at the Family Court hearing. As a result, the court, in apparent despair, strongly reiterated its conclusion that the child ought to be discharged to his grandmother but that this had been prevented by her inability to secure adequate housing. Since the matter had not been rectified, it continued foster care for another 18 months and directed the Commissioner and McMahon to assist in acquiring suitable housing for Mrs. Torres and that such assistance include the commencement of appropriate legal proceedings, including an article 78 proceeding against the Authority. *(Matter of Enrique R.,* 129 Misc 2d 956, 961.)

Although the Family Court may have justifiably felt absolutely frustrated by the apparent irresponsibility on the part of the Authority in failing to ameliorate Mrs. Torres' housing predicament, there was no statutory authority for the court to direct that legal proceedings be commenced by the Commissioner on behalf of the child and his grandmother. Support for the court's direction is claimed in part under Family Court Act § 255, which reads as follows: "It is hereby made the duty of, and the family court or a judge thereof may order, any

state, county, municipal and school district officer and employee to render such *assistance and cooperation as shall be within his legal authority,* as may be required, to further the objects of this act provided, however, that with respect to a school district an order made pursuant to this section shall be limited to requiring the performance of the duties imposed upon the school district and board of education or trustees thereof pursuant to sections four thousand five, forty-four hundred two and forty-four hundred four of the education law, to review, evaluate, recommend, and determine the appropriate special services or programs necessary to meet the needs of a handicapped child, but shall not require the provisions of a specific special service or program, and such order shall be made only where it appears to the court or judge that adequate administrative procedure to require the performance of such duties is not available. It is hereby made the duty of and the family court or judge thereof may order, *any agency or other institution to render such information, assistance and cooperation as* shall be *within its legal authority* concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act. The court is authorized to seek the *cooperation* of, and may use, within its authorized appropriation therefor, the services of all societies or organizations, public or private, having for their object the protection or aid of children or families, including family counselling services, to the end that the court may be assisted in every reasonable way to give the children and families within its jurisdiction such care, protection and assistance as will best enhance their welfare." (Emphasis added.)

In *New York City Hous. Auth. v Miller* (60 AD2d 823, *affg on opn of Justice [later Associate Justice of this court] Arnold L. Fein* 89 Misc 2d 141), we held that the statute did not authorize the issuance of orders requiring the Housing Authority, an independent public corporation, to provide specific persons with immediate housing since such orders were not for "information, assistance [or] cooperation". As held in *Miller,* while the Housing Authority is a public authority created to provide housing, it is not a "child protection and child care" agency: "It is apparent there is no constitutional or statutory obligation imposed upon the Authority or power conferred upon the Family Court to interfere with legally established Authority policies and procedures as to tenant selection or to permit blanket orders to the Authority to

confer specific benefits upon specific persons in disregard of the Authority's constitutional and statutory obligations and established procedures." (89 Misc 2d, at 143.)

Although Family Court Act § 255 does authorize an order directing "assistance and cooperation", as Justice Fein observed in *Miller,* the meaning and scope of the quoted phrase is not set forth in the statute and the Legislature has not seen fit to further address the issue in terms of the Family Court's power, albeit almost 10 years has elapsed since the *Miller* decision. While we agree that legislative attention ought to be directed to clarify the situation, clearly, the statute as it exists today does not authorize the type of order entered here. We appreciate that the court had a very laudable objective, namely, to aid in the transfer of a child from foster status to the custody of a close relative, thereby providing a stable home environment with the attendant love and care, but "the Authority is an independent authority, albeit a government agency, subject to the statutes under which it was created and its own rules and procedures designed to accomplish its purposes." *(New York City Hous. Auth. v Miller, supra,* at 144.)

While the *Miller* court recognized that tenant selection could be subject to judicial review by an appropriate article 78 proceeding (89 Misc 2d, at 144-145), there is nothing in the *Miller* decision to authorize the Family Court to direct that such a proceeding be commenced by the Commissioner of Social Services. It is clear that the court's reference was to judicial proceedings to be initiated by one in the position of the child's grandmother or, possibly, the Law Guardian on behalf of the child. However, no such action has been taken here. Instead, the Family Court Judge acted to compel the Commissioner to pursue a remedy on behalf of the child and his grandmother, an order clearly in excess of the court's power. Neither Family Court Act § 255 nor the State Constitution (NY Const, art VI, § 13) confers such power on the court.

Unquestionably, the Family Court, in reviewing foster care status, may direct the Commissioner to lend necessary assistance in terms of obtaining adequate housing by a specific plan of action designed to promote the best interests of the child. Social Services Law § 392 (9) authorizes the court to direct an agency "to undertake diligent efforts to encourage and strengthen the parental relationship when it finds such efforts will not be detrimental to the best interests of the child." The statute also permits the order to include "a specific plan of action for the authorized agency including,

without limitation, requirements that such agency assist the parent in obtaining adequate housing, employment, counselling, medical care or psychiatric treatment." Section 392 (5-a) further provides that, in reviewing the foster care status, the court shall consider, *inter alia,* "the appropriateness of the plan * * * [and] any further efforts which have been or will be made to promote the best interests of the child."

Thus, it appears the Legislature has accorded the Family Court certain latitude in terms of its exercise of discretion as to foster care status and in approving a plan of action designed to promote the child's best interests. However, the power conferred under Family Court Act § 255 does not extend to an order directing the Commissioner to take specific legal action, essentially as counsel to private indigent parties. To authorize such action would accomplish indirectly what we held in *Miller (supra)* could not be directly ordered. As held in *MIller,* the court does not have the power to direct the Housing Authority to provide or change living accommodations for specific persons, but can only require assistance and cooperation in embodying a formal plan of action. The *Miller* holding, which we reaffirm here and which has been cited with approval by the Court of Appeals *(Matter of Lorie C.,* 49 NY2d 161, 167), cannot be read as empowering the Family Court to direct the Commissioner to do that which cannot be ordered in the first instance.

To the extent it is concluded that the child and his grandmother, as indigent persons, ought to be afforded legal counsel, it has been recognized that the courts have "broad discretionary power to assign counsel without compensation in a proper case". *(Matter of Smiley,* 36 NY2d 433, 441.) CPLR 1102 (a) permits the assignment of counsel where leave has been granted to proceed as a poor person. On an appropriate showing of indigency, counsel may be assigned from the private Bar to serve without compensation "in accordance with the Bar's traditional responsibility 'to willingly accept assignments * * * to help those who cannot afford financially to help themselves.' *(Jacox v Jacox,* 43 AD2d 716, 717.)" *(Yearwood v Yearwood,* 54 AD2d 626; *see also, Medina v Medina,* 109 AD2d 691; *Farrell v Farrell,* 55 AD2d 586.) The scope of such authority, however, does not extend to direct that such legal services be provided out of public funds in the absence of statutory authorization for such expenditure *(Matter of Smiley, supra).*

The order of the Family Court clearly may not authorize

the expenditure of public funds to provide counsel to private civil litigants. No provision in the Family Court Act exists or has been cited to authorize such action, which we find to be beyond the limited power conferred upon the Family Court by the Legislature.

In *Matter of Lorie C. (supra)*, the Court of Appeals reviewed in depth the legislative history of Family Court Act § 255, concluding that the statute was to be strictly construed as to that court's limited jurisdiction. In interpreting the legislative provision, the court carefully analyzed the three sentences in the statute, which deal with three separate and distinct situations. Only the first two sentences relate to the court's authority to issue an order. These are in sharp contrast to the authority set forth in the third sentence, which broadly and generally empowers the Family Court "to seek the cooperation of * * * all societies or organizations, public or private, having for their object the protection or aid of children or families, including family counselling services".

The first sentence, while authorizing issuance of an order, deals with State, county, municipal and school district officers and employees. The second sentence, which extends to any agency or institution which has or will have a child under its care, treatment, supervision or custody, restricts the court's jurisdiction to ordering that "assistance and cooperation" be provided. While the court in *Lorie C.* found it unnecessary in that case to define the statutory phrase "assistance and cooperation", it did hold that the phrase "cannot be read as permitting an order which denigrates from that officer's statutory authority, any more than it can be read as expanding such an official's authority into areas not granted by statute" (49 NY2d, at 171). Judge Meyer, writing for the court, observed, in part, as follows: "It is sufficient for present purposes to note that a plan requiring conformance under penalty of contempt with the responsibilities, standards and procedures it outlines is outside the scope of either the 'assistance' or the 'cooperation' for which the section provides" *(supra,* at 171-172).

Similarly, in our case, the direction that the Commissioner institute legal proceedings, including an article 78 proceeding against the Housing Authority, is beyond the scope of the "assistance and cooperation" provision of Family Court Act § 255. The order exceeds the permissible scope of the Family Court's authority and unnecessarily and improperly interferes with the Commissioner's discretion. As noted by the court in

*Lorie C. (supra,* at 171), "courts do not normally have overview of the lawful acts of appointive and elective officials involving questions of judgment, discretion, allocation of resources and priorities". While the statute may authorize the Family Court to require assistance and cooperation, the court has no legislative power to direct a city official, such as the Commissioner of Social Services, to institute legal proceedings against another governmental body on behalf of particular private litigants.

Accordingly, the order, Family Court, New York County (Elrich A. Eastman, J.), entered September 19, 1985, which granted an extension of foster care placement for the statutory period and directed the Commissioner of Social Services to assist the child and his grandmother in obtaining adequate housing, so that she may assume custody by, *inter alia,* commencing an article 78 proceeding against the City Housing Authority, should be modified, on the law, to delete the direction that the Commissioner undertake such legal proceedings, including an article 78 proceeding on behalf of the grandmother, and otherwise affirmed, without costs or disbursements.

SULLIVAN, J. P., ROSS, ASCH and ELLERIN, JJ., concur.

Order, Family Court of the State of New York, New York County, entered on or about September 19, 1985, unanimously modified, on the law, to delete the direction that the Commissioner undertake legal proceedings, including an article 78 proceeding on behalf of the grandmother, and otherwise affirmed, without costs and without disbursements.