In the Matter of DALE P., a Child Alleged to be Neglected. BARBARA J. SABOL, as Commissioner of New York City Department of Social Services, Appellant; NANCY P., Respondent.

Second Department, April 5, 1993

**APPEARANCES OF COUNSEL**

*O. Peter Sherwood, Corporation Counsel* of New York City

*(Leonard Koerner* and *Ronald E. Sternberg* of counsel), for appellant.

*Lenore Gittis, Law Guardian,* New York City *(Carol Goldstein* of counsel), for infant.

### OPINION OF THE COURT

COPERTINO, J.

This appeal concerns the authority of the Family Court to order the Commissioner of the New York City Department of Social Services (hereinafter the Commissioner) to commence a termination of parental rights proceeding intended to free a child for adoption by an unrelated person with whom the child had been previously placed by the court pursuant to Family Court Act article 10. In addition to contending that such an order is unauthorized under the relevant statutes because the child was never committed to her care, the Commissioner argues that there also was no legal basis for the alternative direction that she provide legal representation to the unrelated person to aid her in prosecuting an adoption proceeding. We hold that the Family Court did not exceed its authority and therefore affirm the order appealed from in its entirety.

The background of the case may be summarized briefly. On January 17, 1987, the subject child, Dale P., was born to Nancy P. and a father whose name and whereabouts are unknown. On February 29, 1988, the Commissioner began a neglect proceeding in the Family Court, Queens County, with respect to Dale and two older half brothers. The Commissioner alleged, *inter alia,* that Dale's physical and emotional condition was impaired or was in imminent danger of becoming impaired. As a result of misuse of drugs, his mother had failed to exercise a minimum degree of care in supplying adequate food, clothing, or education, or in providing proper supervision or guardianship. Among the facts stated in support of these allegations were that on January 17, 1988, the mother left her children with a friend and did not contact them until her return on February 7, 1988, that she left no provisions for them, and that she abused cocaine. Dale's care was voluntarily assumed by the mother's friend, Mary H., who is not related to him. The two older boys went to live with their father, though apparently they later became members of Mary H.'s household as well. Their case is not before us at this time.

Upon the mother's default in appearing to answer the petition, the Family Court (De Phillips, J.), issued an order dated April 5, 1988, in which a finding of neglect was made. Pursuant to another order of that same date the court placed the child with Mary H. for a period of 18 months pursuant to Family Court Act § 1055.* Mary H. filed a subsequent petition, in which she alleged that the mother had not visited or called Dale and was unable to care for him, and that Mary H. was providing love, care, and nurturing for the child. In an order dated July 28, 1989, the court extended the placement with her for one year, starting from October 5, 1989.

Approximately one year later the Commissioner filed a petition dated August 29, 1990, requesting another year's extension of Dale's placement with Mary H. The Commissioner alleged that Mary H. was providing good care and wished to adopt Dale, who was described as "achieving developmental progress". Mary H. also was alleged to be receiving public assistance on the child's behalf. The petition stated that Dale's mother, a known drug abuser, had not cooperated with child welfare authorities and that her whereabouts were unknown. The Family Court thereafter issued two more orders, both dated October 19, 1990, which provided that Dale's placement was extended for an additional year, effective October 5, 1990, and directed the Commissioner to institute a termination of parental rights proceeding on behalf of the child. However, the Commissioner moved to vacate the order which directed her to initiate the termination proceeding, arguing that because Dale was not in her care and custody, she should not be asked to take that action, suggesting instead that Mary H. herself initiate an adoption proceeding pursuant to Domestic Relations Law § 111.

In response to this motion the court issued the order appealed from, modifying its prior order to provide that if the Commissioner failed to bring a termination proceeding within 30 days, the "foster mother", Mary H., was authorized to bring an adoption proceeding and the Commissioner was to afford her legal representation in connection with such a proceeding. The court relied upon Family Court Act §§ 255 and 1055 as authority for its action (*Matter of Dale P.,* 150 Misc 2d 366, 369). This appeal ensued. The Commissioner elected not to seek a stay of the Family Court's order pending the outcome of the appeal because she determined that Dale's

---

* Effective November 1, 1989, the initial placement period was reduced to one year (L 1989, ch 458, § 2).

interests would not be well served by delay. Commendably, she obeyed the order to the extent of providing representation to Mary H. in her prosecution of an adoption proceeding. Thus, the instant appeal is technically academic. However, we agree with the Commissioner that the issues involved merit full consideration, and thus consider her arguments *(see, Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 713-715).

The Commissioner contends that Dale was not a foster child in the care of a foster parent, as those terms are defined in Social Services Law § 371 (19). Consequently, the Commissioner argues that the court's direction to commence the termination proceeding was outside the authority granted to her by Social Services Law § 384-b, which concerns actions she may take with regard to foster children. She asserts that the statute does not provide for initiation of a proceeding by a custodian with whom a child is directly placed by the Family Court. She argues that Family Court Act § 1055 (d) cannot be read more expansively than Social Services Law § 384-b, and thus cannot serve as authority for the order made by the Family Court. She claims, as she did before the Family Court, that permanency planning can be effectuated by means of an adoption proceeding brought pursuant to Domestic Relations Law § 111, and, further, that the court was without power to direct her to take specific legal action on behalf of a private litigant. Moreover, she maintains that such a direction might place her in an "untenable position", because it is conceivable that upon investigation, she might oppose the adoption in which she represents the proposed adoptive parent.

The child's Law Guardian supports the Family Court's position, arguing that Family Court Act § 1055 gave the court discretionary authority to order the Commissioner to commence a termination proceeding on Dale's behalf, and that Family Court Act §§ 255 and 1015-a authorized the court to provide legal representation as a form of alternative relief. The Law Guardian also disputes the Commissioner's claim that such representation could place her in an "untenable position" because any attorney provided by her would owe his or her professional duty to the proposed adoptive parent, not to the opposing agency, in the event opposition to the adoption arose.

### Directing Commencement of a Proceeding to Terminate Parental Rights

We agree with the Family Court's description of Mary H. as a foster mother. The Family Court was empowered to

guard the welfare of the child, even though the child was no longer in the care of the person who had neglected him (see, Family Ct Act § 1013 [d]). Thus, the Family Court had the legal authority to place Dale with Mary H. (see, Social Services Law § 374 [1]; Family Ct Act § 1052 [a] [iii]; § 1055 [a]). Because the Family Court was authorized by law to place Dale outside his family, the Family Court is an "authorized agency" (see, Social Services Law § 371 [10] [b]). Further, a foster child is defined as a person in the care, custody, or guardianship of an authorized agency who is placed for temporary or long-term care (see, Social Services Law § 371 [19]). The person with whom the foster child is so placed is defined as a foster parent (see, Social Services Law § 371 [19]). Thus, although no social services agency, public or private, was responsible for the placement, Dale became a foster child in law as well as in fact, and Mary H. became his foster parent.

There are differences, of course, between foster care placement arranged by a child welfare agency and one involving, as here, direct placement by the court. Federal and State law mandate that a child welfare agency choose a foster home which is certified or approved (see, 42 USC § 671 [a] [10]; § 672 [c] [1]; Social Services Law §§ 375, 398 [2] [b]; § 398-a). It has been noted that superior supervision and more public money is available to provide care if placement under this scheme is made (see, Matter of Daniel T. C., 141 Misc 2d 50, 53-54; Besharov, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1055, 1993 Pocket Part, at 187). We therefore stress that our determination is narrowly directed to the Commissioner's argument that Dale P. was not a foster child. The Commissioner's contention that Dale P. falls within gaps in the statutory scheme is contrary to the legislative intent expressed in Social Services Law § 384-b (1).

We agree with the Law Guardian's assessment that Family Court Act § 1055 provides all the statutory authority needed to support the Family Court's order directing the Commissioner to commence a termination of parental rights proceeding on Dale's behalf. Pursuant to Family Court Act § 1052 (a) (iii), the court placed Dale with Mary H. as a "suitable person", instead of with a relative, public officer, or private entity (Family Ct Act § 1055 [a]). Family Court Act § 1055 (d) states, in pertinent part, as follows: "In addition to or in lieu of an order of extension or continuation of a placement * * *

the court may make an order directing a social services official or other duly authorized agency to institute a proceeding to legally free the child for adoption, if the court finds reasonable cause to believe that grounds therefor exist". Although the Family Court already had the power to make placement orders, this did not prevent the Legislature from providing this explicit grant of authority " 'so that the child * * * will not languish in foster care limbo * * * [and] to prevent [the child] from being "out of sight and out of mind" ' " (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1055, at 448-449, quoting Mem of Temporary Commn on Child Welfare in support of L 1975, ch 220).

The only remaining question—slight at best—is whether for purposes of Family Court Act § 1055 (d) there is any reason to distinguish a foster child who is not placed by or with a social welfare agency from one placed by the court in a home not certified under applicable State and Federal law. We hold there is not. If the court has the power to place the child in such an environment under Family Court Act § 1055 (a), and to continue such placement pursuant to subdivision (b), it must also be presumed to have the power to direct the initiation of proceedings to free the child for adoption by a foster parent caring for him in that home. If it did not have such power, there would be a danger of the very "foster care limbo" sought to be avoided by passage of subdivision (d) (see also, Social Services Law § 384-b [1] [b]). We therefore conclude that directing the Commissioner to commence a termination of parental rights proceeding on behalf of Dale P. was authorized by law.

### Directing the Commissioner to Represent Mary H. in an Adoption Proceeding

■ The element of the court's order which directs the Commissioner to represent Mary H. in an adoption proceeding is more problematic. Family Court Act § 1055 (d) provides that upon the official's failure to institute a termination proceeding within 90 days after entry of the court's order directing her to do so the court "shall" permit the foster parent to initiate the proceeding herself. The statute clearly contemplates this foster parent-initiated termination proceeding as a first step to adoption, inasmuch as it also provides that the court has the option of barring the foster parent from beginning a termina-

tion proceeding if it has reasonable cause to believe that the foster parent would not succeed in a subsequent adoption proceeding. Indeed, we note that some six months after the issuance of the order appealed from, the Legislature amended the Social Services Law to provide that after a child is freed for adoption the court must inquire whether or not the foster parent with whom the child resides wishes to adopt, and must accept an adoption petition from that person if one is filed (see, Social Services Law § 384-b [10]; Carrieri, Practice Commentaries, McKinney's Cons Laws of NY, Book 52A, Social Services Law § 384-b, at 591). This is but a further indication of the Legislature's intent to link the termination proceeding and the adoption proceeding. We conclude that the Family Court did not act improperly in permitting Mary H. to commence an adoption proceeding. Family Court Act § 1055 does not, however, expressly grant the court the power to order a local official to do anything to assist the foster parent in the prosecution of a termination proceeding, nor, of course, in an adoption proceeding. Consequently, we must find a basis elsewhere for directing such an official to undertake the legal representation of the foster parent.

The Family Court, and the Law Guardian, rely on Family Court Act § 255. It provides, in pertinent part: "It is hereby made the duty of, and the family court or a judge thereof may order, any state, county, municipal and school district officer and employee to render such assistance and cooperation as shall be within his legal authority, as may be required, to further the objects of this act * * * It is hereby made the duty of and the family court or judge thereof may order, any agency or other institution to render such information, assistance and cooperation as shall be within its legal authority concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act. The court is authorized to seek the cooperation of, and may use, within its authorized appropriation therefor, the services of all societies or organizations, public or private, having for their object the protection or aid of children or families, including family counseling services, to the end that the court may be assisted in every reasonable way to give the children and families within its jurisdiction such care, protection and assistance as will best enhance their welfare".

The leading case interpreting this section is *Matter of Lorie C.* (49 NY2d 161) wherein the Court of Appeals reviewed its

language and legislative history in deciding that it did not authorize a court-ordered plan which affected the functioning of a local Department of Social Services agency by allocating responsibilities for certain children and their foster parents between the agency and the court's Probation Department. The Court stated that any valid order made under this section (1) must be within the legal authority of the person or institution to which it is addressed, and (2) must further the objectives of the Family Court Act. The Court also indicated that in ordering a public official to render "assistance and cooperation", the Family Court, as a court of limited jurisdiction, cannot thereby enlarge, reduce, or unduly interfere with the responsibilities of the official as defined by law (*Matter of Lorie C., supra,* at 168, 171).

Thus, in a case which followed *Lorie C. (supra),* the Appellate Division, First Department, held that the Family Court did not have the authority under Family Court Act § 255 to direct the Commissioner to take specific legal action—a proceeding pursuant to CPLR article 78 against the New York City Housing Authority—because adequate housing was needed to enable a child's grandmother to obtain custody of her grandchild. The Court noted that if the child and his grandmother, as indigent persons, ought to be afforded legal counsel, an assignment thereof by the court would have to be made under CPLR 1102 (a) on a *pro bono* basis. "The scope of such authority * * * does not extend to direct that such legal services be provided out of public funds in the absence of statutory authorization * * * the Family Court clearly may not authorize the expenditure of public funds to provide counsel to private civil litigants. No provision in the Family Court Act exists or has been cited to authorize such action" (*Matter of Enrique R.,* 126 AD2d 169, 175-176). The Court added that directing the Commissioner to institute legal proceedings, including a proceeding pursuant to CPLR article 78, was beyond the scope of the "assistance and cooperation" provision contained in Family Court Act § 255. The appellant, as may be expected, relies on *Enrique R. (supra),* while the Law Guardian argues that the case before us is distinguishable because the order here related to services that the Commissioner is authorized to provide.

We conclude the Family Court Act allows for the assignment of counsel to Mary H. because of the nature of the judicial proceedings contemplated, and that such an assignment furthers the objectives of that Act. Moreover, we dis-

agree with the Commissioner's contention that she cannot provide this form of assistance.

Family Court Act § 262 (a) (iv) provides that in any proceeding under Social Services Law § 384-b "[a] foster parent, or other person having physical or legal custody of the child" is entitled to have counsel assigned by the court in a case where she is financially unable to retain counsel. Social Services Law § 384-b (3) (b) states that "[a] proceeding under this section may be originated by * * * a foster parent authorized to do so pursuant to * * * section one thousand fifty-five of the family court act". The extension of the right to counsel to a foster parent indicates a legislative willingness to have government pay even where such person does not yet enjoy any right to retain custody of the subject child (see, Social Services Law § 383 [2] [legal custody remains with agency placing child]; see also, Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196, 205). That being so, we can find no reason to conclude that Family Court Act § 262 (a) (iv) does not apply to a case such as the one at bar, where the foster parent wishes to commence a termination of parental rights proceeding aimed at achieving the right to custody. The foster parent who wishes to adopt must bring such a proceeding because no standing to seek permanent custody exists absent termination of parental rights (see, Matter of Michael B., 80 NY2d 299, 310; Matter of Rivers v Womack, 178 AD2d 532). Inasmuch as a foster parent's desire to adopt is hardly an unusual occurrence, we must presume that if the Legislature did not wish to make assigned counsel available for the necessary termination proceedings it would have so indicated. Accordingly, we conclude that Mary H. could be provided with assigned counsel in order to initiate a termination of parental rights proceeding incident to Dale's adoption.

We recognize, of course, that proceedings pursuant to Social Services Law § 384-b are not adoption proceedings per se, which are governed by Domestic Relations Law article 7. However, in view of one of the central public policy goals set forth in that section under which a termination proceeding is authorized—specifically, finding a normal permanent home for children as early as possible where the natural parent cannot or will not provide such a home (Social Services Law § 384-b [1]; Matter of Michael B., 80 NY2d 299, 310, supra)—we cannot ignore the highly interrelated nature of termination and adoption proceedings where the same person will be pursuing both. We conclude that where the same indigent

person is prosecuting both a termination of parental rights proceeding and an adoption proceeding, he or she is entitled to assigned counsel pursuant to Family Court Act § 262 with respect to both the termination of parental rights and the adoption proceedings. To hold otherwise could result in an anomalous situation wherein Mary H. could have the aid of counsel in freeing Dale as a preliminary step in adopting him, and then find an obstacle in her path because that aid must be withdrawn before the process is completed and the adoption finalized. Such a result cannot be permitted in the face of the purposes of Social Services Law § 384-b previously noted.

Because we conclude that statutory authority exists for the assignment of counsel at public expense we come to the final question: whether the appellant may be named as the provider of legal services instead of assigned counsel, the usual case where an assignment is made. Had the court acted under Family Court Act § 262, its order would have been implemented pursuant to article 18-B of the County Law (see, Family Ct Act § 262 [c]). We need not reverse on this ground, however, because the court made its order pursuant to Family Court Act § 255, and, thus, for purposes of this appeal, we are concerned only with the legal authority of the court to assign counsel in the first instance. However, in view of the appellant's objection we must determine whether any reason exists serving to bar the Commissioner as the provider of legal services in this case. We conclude that none does.

The appellant's contention that she could be placed in an "untenable position" if she found that opposition to Mary H.'s petition was warranted is not one which arises from an attorney's ethical obligations; the Commissioner's assigned role is not that of an attorney (see, Social Services Law §§ 17, 34). Rather, we view the Commissioner's argument as arising from her desire to exercise her independent judgment with regard to Dale as part of the lawful discharge of her statutory responsibilities. While this is always a serious concern, we do not believe that it gives rise to the result she urges here.

It is familiar law that, in general, a court must not oversee the lawful workings of another branch of government where the functions sought to be affected involve matters of judgment or discretion (see, Matter of Lorie C., 49 NY2d 161, 171, supra, citing Matter of Abrams v New York City Tr. Auth., 39 NY2d 990, 992). A reasonable argument thus may be made that the Commissioner cannot be asked to give "assistance and cooperation" (Family Ct Act § 255) in the form of legal

services to a person seeking to adopt if she has decided that the adoption would not be in the best interests of the child. However, as noted previously, the Legislature has seen fit to give the Family Court the power to order the appellant to institute proceedings to legally free that child for adoption if it, not the Commissioner, finds reasonable cause to believe that grounds exist therefor (see, Family Ct Act § 1055 [d]). No claim has been made that this section unconstitutionally intrudes on the province of the Executive Branch. Consequently, such an order must be deemed valid and cannot be flouted on the ground that a termination proceeding is not, in the agency's judgment, appropriate. We can find no basis for concluding that a direction to aid the custodial foster parent in adopting, the next logical step, involves any greater interference—especially where, as here, the Commissioner goes so far as to deny that Dale is a foster child under her supervision. Indeed, in this case there is no indication that the appellant ever expressed any reservations about Mary H. to the court. The reverse is true.

Finally, there is no dispute that the direction to aid Mary H. in adopting Dale by providing legal representation furthers the objectives of the Family Court Act (see, Family Ct Act §§ 255, 1055; *Matter of Lorie C., supra*).

Accordingly, the order appealed from is affirmed in its entirety.

BALLETTA, J. P., O'BRIEN and RITTER, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.