[613 NYS2d 276]

In the Matter of Patricia HH., Respondent, v Laura II. et al., Respondents, and Chemung County Department of Social Services, Appellant.

Third Department, June 2, 1994

## APPEARANCES OF COUNSEL

*Kevin Moshier,* Elmira, for appellant.

*Andrew M. Rothstein,* Elmira, for infant.

### OPINION OF THE COURT

MIKOLL, J. P.

The issue presented on this appeal concerns the authority of Family Court in ordering respondent Chemung County Department of Social Services (hereinafter DSS) to commence a termination of parental rights proceeding intended to free a child for adoption by the unrelated person with whom the child was placed by Family Court.

In January 1991, DSS commenced a neglect proceeding pursuant to Family Court Act article 10 against respondents Laura II. and Mark II. (hereinafter collectively referred to as respondents) alleging that they had neglected their son, William (born in August 1990). Petitioner, who is a friend of William's family, commenced a proceeding pursuant to Family Court Act article 6 seeking custody of William. By order entered February 1, 1991, Family Court granted petitioner and her spouse temporary legal and physical custody of William pending further hearings on the neglect petition *(see,* Family Ct Act § 1027), and DSS was granted an order of supervision *(see,* Family Ct Act § 256). Respondents thereafter consented to a finding of neglect and, apparently, to the placement of William with petitioner and her spouse. At the conclusion of the dispositional phase of the proceedings, Family Court ordered that custody of William continue with petitioner and her spouse for an additional period of up to one year *(see,* Family Ct Act § 1052 [a] [iii]; § 1055 [a], [b] [i]). Additionally, Family Court ordered that DSS' order of supervision remain in effect for the same period of time and, based upon DSS' recommendations, imposed certain conditions upon respondents. Family Court subsequently granted orders extending both William's placement with petitioner and her spouse and DSS' order of supervision.

In October 1992, petitioner commenced the instant proceeding seeking an order permitting her to commence a perma-

nent neglect proceeding against respondents or, in the alternative, directing DSS to do so. Family Court granted petitioner's application and ordered, *inter alia,* that DSS institute a proceeding pursuant to Family Court Act § 1055 (d)[1] to free William for adoption. This appeal by DSS followed.[2]

The issue involved here was recently addressed by the Second Department in *Matter of Dale P.* (189 AD2d 325, *lv granted* 82 NY2d 661) in a factual situation not unlike the instant matter. The Court in *Matter of Dale P. (supra)* held that Family Court had the authority to place the child outside his family pursuant to Social Services Law § 374, Family Court Act § 1052 (a) (iii) and § 1055 (a). The Second Department opined that because Family Court possessed the authority to place the child outside its family, the court is an "authorized agency" pursuant to Social Services Law § 371 (10) (b), and that there is no reason to differentiate between a foster child who is not placed by or with a social welfare agency and one directly placed by the court in a home not certified under applicable State and Federal law. The Second Department held that a child placed privately nonetheless became a "foster child" in law as well as in fact, and the unrelated person became the child's "foster parent" as those terms are defined in Social Services Law § 371 (19). While Family Court concluded in the instant case that the "authorized agency" caring for William was in fact DSS by virtue of the order of supervision granted to it by Family Court and the extensions thereof, we agree with the reasoning of *Matter of Dale P. (supra)* in concluding that Family Court figured more accurately as the "authorized agency" and that Family Court Act § 1055 provides the statutory authority needed to support Family Court's order directing DSS to proceed in termination of parental rights on the child's behalf.

In so holding, we reject the dissent's narrow definitional approach as to whether William was ever in the "care" of an

1. Family Court Act § 1055 (d) provides, in relevant part, that "[i]n addition to or in lieu of an order of extension or continuation of a placement * * * the court may make an order directing a social services official or other duly authorized agency to institute a proceeding to legally free the child for adoption, if the court finds reasonable cause to believe that grounds therefor exist". In the event the official or agency fails to proceed with such a proceeding within a specified time period, the foster parent(s) with whom the child resides may, under certain circumstances, institute the proceeding *(see,* Family Ct Act § 1055 [d]).

2. DSS' motion for a stay pending appeal was granted by a Justice of this Court.

authorized agency and its conclusion that the relevant statutory law never contemplated the broad interpretation employed by Family Court in holding that William was in fact in the care of an "authorized agency". We find, as did the Second Department, that because the court was clearly empowered to place William and to continue such custody, it also was authorized to direct the initiation of proceedings to free the child for adoption under Family Court Act § 1055 (d).

CREW III, J. (dissenting). I respectfully dissent. For purposes of a proceeding pursuant to Social Services Law § 384-b,[1] a "permanently neglected child" is defined as a child "in the care of an authorized agency" whose parent has failed for a period of more than one year after the child came into the care of an authorized agency to "substantially and continuously or repeatedly * * * maintain contact with or plan for the future of the child, although physically and financially able to do so" (Social Services Law § 384-b [7] [a]). A proceeding under this section may be commenced by, among others, "an authorized agency or by a foster parent authorized to do so pursuant to [Social Services Law § 392 or Family Court Act § 1055]" (Social Services Law § 384-b [3] [b]). A foster parent, in turn, is defined as "any person with whom a child, in the care, custody or guardianship of an authorized agency, is placed for temporary or long-term care" (Social Services Law § 371 [19]).[2] Inasmuch as temporary custody has been granted

---

1. A proceeding under Social Services Law § 384-b may be commenced upon one or more of the following grounds: (1) both parents are dead and no guardian has been appointed for the child, (2) the child has been abandoned, (3) the parents are presently and for the foreseeable future will be unable to care for the child by reason of mental illness or mental retardation, (4) the child is a permanently neglected child, or (5) the parent(s) severely or repeatedly abused the child and the child has been in the care of an authorized agency for one year immediately prior to the commencement of the proceeding (Social Services Law § 384-b [4]).

2. "Foster care" is defined under Department of Social Services regulations as "all activities and functions provided relative to the care of a child away from his [or her] home 24 hours per day in a foster family free home or a duly certified or approved foster family boarding home or a duly certified group home, agency boarding home, child care institution, health care facility or any combination thereof" (18 NYCRR 427.2 [a]; see, Social Services Law § 392 [1] [a]; see also, Family Ct Act § 1055-a [1] [a]). Similarly, a "foster child" is defined as "any person, in the care, custody or guardianship of an authorized agency, who is placed for temporary or long-term care" (Social Services Law § 371 [19]). To qualify as a foster child under the relevant regulations, the child in question must meet certain specific criteria (see, 18 NYCRR 427.2 [c]) including, inter alia, that his or her care and

to petitioner and her spouse and guardianship is not an issue, this Court's inquiry must, in my view, focus upon whether William may be said to be "in the care of an authorized agency".

Based upon my review of the record as a whole and the relevant statutory and regulatory provisions, I am of the view that William is not "in the care of an authorized agency" and, hence, is not properly the subject of a permanent neglect proceeding under Social Services Law § 384-b. As the majority correctly notes, both respondent Chemung County Department of Social Services (hereinafter DSS) and Family Court qualify as an "authorized agency" within the meaning of Social Services Law § 371 (10). The mere presence of an authorized agency, however, is not sufficient. In order for William to be the subject of a permanent neglect proceeding, he must be "in the care of an authorized agency" and, in my view, the record before this Court fails to support such a finding. To that end, I acknowledge that DSS was granted an order of supervision over William[3] and was, to one degree or another, responsible for the terms and conditions imposed upon William's natural parents following the dispositional hearing. In my view, however, DSS' limited intervention in this matter does not rise to the level of providing "care" to William on a day-to-day basis.

In this regard, I note that the phrase "in the care of" is not expressly defined in either Social Services Law article 6 or the applicable regulations. Although petitioner and DSS each have advanced their own competing definitions of the phrase,[4] "care" is commonly understood to mean having and/or assuming the responsibility for the safety and well-being of an individual, or providing for and attending to that individual's

custody or guardianship and custody have been transferred to an authorized agency pursuant to Social Services Law § 384 or § 384-a or that he or she has been placed with a social services official pursuant to Family Court Act articles 3, 7 or 10 (see, 18 NYCRR 427.2 [c] [3] [i], [ii]).

**3.** I note in passing that although DSS asserts that the order of supervision granted here was with respect to the adult(s) responsible for William's care (see, e.g., Family Ct Act §§ 1052, 1054, 1057), Family Court's order makes it quite apparent that the order of supervision was granted with respect to William (see, Family Ct Act § 256).

**4.** Although it may be argued that "supervision" is a component of "care", I reject petitioner's assertion that the two terms are synonymous. Additionally, although I do not necessarily accept DSS' contention that "care", when used in the context of a proceeding under Social Services Law § 384-b, must *always* be interpreted to mean "foster care", I do agree that a child's entry into foster care certainly would place him or her "in the care of an authorized agency".

needs *(see generally,* Random House Dictionary of the English Language 314-315 [unabridged 2d ed 1987]; Webster's Third New International Dictionary 338 [unabridged 1981 ed]). Plainly, petitioner and her spouse are the individuals primarily responsible for William's safety and well-being and who protect him, nurture him and attend to his needs on a daily basis. Thus, while Family Court retains continuing jurisdiction over this matter and DSS has been granted an order of supervision, it is apparent to me at least that it is petitioner and her spouse in whose "care" William has been placed. I must therefore conclude that William does not meet the statutory definition of a permanently neglected child and, hence, is not properly the subject of a termination proceeding pursuant to Social Services Law § 384-b.

In reaching this conclusion, I decline to follow the majority's adoption of the Second Department's decision in *Matter of Dale P.* (189 AD2d 325, *lv granted* 82 NY2d 661). Implicit in the approach adopted by the majority here and the Second Department in *Dale P.* is a finding that the subject children were "in the care of an authorized agency", i.e., Family Court. Again, I recognize that Family Court is indeed vested with the authority to place a child outside his or her home *(see,* Family Ct Act § 1055 [a]) and acknowledge the scope of Family Court's jurisdiction over, *inter alia,* neglect proceedings *(see,* Family Ct Act § 1013). In my view, however, the bare exercise of such authority and/or jurisdiction cannot be deemed the functional equivalent of having a child "in the care of" Family Court and, therefore, I simply cannot accept the rationale adopted by the majority.[5] Moreover, adopting the sweeping definition of "care" advanced by petitioner, crafted by the Second Department in *Dale P.* and implicitly accepted by the majority, would, I believe, be contrary to legislative history underlying Social Services Law § 384-b[6] and, further, would render mean-

---

**5.** I am similarly unpersuaded that Family Court's placement of a child with a noncertified, private caregiver transforms the child into a "foster child" and the caregiver into a "foster parent". In my view, petitioner and William simply do not meet the respective definitions of "foster parent" and "foster child" *(see,* Social Services Law § 371 [19]; 18 NYCRR 427.2 [c]).

**6.** The legislative history reveals that Social Services Law § 384-b *(see,* L 1976, ch 666) was intended to, *inter alia,* facilitate the freeing of children for adoption and reduce the over-all incidence of foster care *(see,* Mem in Support, Bill Jacket, L 1976, ch 666; Mem of Temporary State Commn on Child Welfare, 1976 NY Legis Ann, at 239). The legislative history further indicates that it was anticipated that this would lead to several million dollars in savings each year by the State, as well as local governments, for

*(n. cont'd)*

ingless the distinctions drawn between, among others, foster parents and other suitable relatives or individuals with whom a child may be placed *(see, e.g.,* Family Ct Act §§ 1017, 1055; Social Services Law §§ 371, 384-b, 392).

As a final matter, petitioner contends that because she, as a private caregiver, is not afforded the same rights as foster parents under Social Services Law § 384-b, both she and William have been denied equal protection of the law *(see,* NY Const, art I, § 11). Although petitioner's constitutional challenge, raised for the first time on appeal and without notice to the Attorney-General, is not properly before this Court *(see, e.g., Matter of Dedrick M.,* 89 AD2d 781, 782), were I to reach this issue, I would conclude that no equal protection violation has occurred.

It cannot seriously be argued that the welfare of children is not an area of legitimate State concern. To that end, the Legislature enacted Social Services Law § 384-b in an attempt to cure what were perceived to be the twin evils of long-term foster care[7]—"its harmful effects upon proper child development and the fiscal impact of the cost of indefinite maintenance of children by the State" *(Matter of Carl N.,* 91 Misc 2d 738, 745 [Levine, J.]; *see,* Mem in Support, Bill Jacket, L 1976, ch 666; Mem of Temporary State Commn on Child Welfare, 1976 NY Legis Ann, at 239). In my view, the mere fact that Social Services Law § 384-b extends to children in foster care certain protections not afforded to children for whom a private caregiver has assumed responsibility does not render the statute discriminatory *(see, Matter of Carl N., supra,* at 746-747). Moreover, by limiting the scope of a permanent neglect proceeding to children in foster care, the State is able to lessen its financial burden in this regard *(see,* Mem in Support,

---

unnecessary foster care expenditures *(see,* Mem of Temporary State Commn on Child Welfare, 1976 NY Legis Ann, at 239; Mem in Support, Bill Jacket, L 1976, ch 666; Mem of NY State Dept of Social Servs, Bill Jacket, L 1976, ch 666; Budget Report, Bill Jacket, L 1976, ch 666). In my view, the purpose of the statute would not be served by construing "care" in so broad a fashion as to bring within the scope of Social Services Law § 384-b every child who was ever the subject of a proceeding under Family Court Act article 10 and was placed by Family Court with a private caregiver pursuant to Family Court Act §§ 1052 and 1055.

7. Again, it is my view that a child conceivably could be "in the care of an authorized agency" for purposes of Social Services Law § 384-b without necessarily being in "foster care". For purposes of this discussion, however, I shall use the phrase "foster care" when referring to children "in the care of an authorized agency".

Bill Jacket, L 1976, ch 666; Mem of Temporary State Commn on Child Welfare, 1976 NY Legis Ann, at 239).

Finally, I am of the view that limiting permanent neglect proceedings to those instances where, by virtue of the fact that the child is "in the care of an authorized agency", the agency has been *required* to exercise "diligent efforts" before seeking termination of parental rights *(see,* Social Services Law § 384-b [7] [a], [f]; *compare,* Family Ct Act § 1055 [c]), strikes a proper balance between the rights of the biological parents and the rights of the child *(see generally, Matter of Michael B.,* 80 NY2d 299, 308-311). Thus, inasmuch as the statute in question is rationally related to legitimate State interests *(see, People v Walker,* 81 NY2d 661, 668-669; *Maresca v Cuomo,* 64 NY2d 242, 250-251, *appeal dismissed* 474 US 802),[8] I perceive no constitutional violation.

In light of the foregoing, I would reverse Family Court's order and dismiss the petition.

WHITE, CASEY and YESAWICH JR., JJ., concur with MIKOLL, J. P.; CREW III, J., dissents in a separate opinion.

Ordered that the order is affirmed, with costs.

---

8. Petitioner concedes that private caregivers do not constitute a suspect class and, although noting that both she and William arguably have asserted a fundamental right, appears to agree that the rational basis test would apply here.