OPINION OF THE COURT
Bruce M. Kaplan, J.
J. C. has lived but 6V2 years. Unfortunately, his life has been one of acute distress because he is afflicted with a rare and particularly debilitating strain of hemophilia A with a severe factor VIII deficiency, and a high inhibitor factor.
The complexities of his medical condition necessitate the most thoroughgoing preventive measures. He requires an exhaustive regimen of medication, and near constant monitoring such that a layperson could not perform those vital tasks without intensive training.
At all times J. must remain in close proximity to a Regional Comprehensive Hemophilia Diagnostic and Treatment Center (hereinafter Center) which is the only type of hospital possessing the specialized facilities necessary to treat his affliction.
His mother K. C. C. (hereinafter respondent mother) was insufficiently sensitive about, and compliant with the extraordinary precautions necessary to safeguard his precarious con *564 dition. This resulted in a finding of neglect against her, and his placement with the Commissioner of Social Services (CSS) for one year. Subsequent extensions of placement have been granted annually to the present, during which time efforts have been made to provide respondent mother with the requisite training. They were unsuccessful due to her lack of cooperation.
The respondent mother’s shortcomings led the court to direct CSS to file a petition to terminate her parental rights. Her motion to dismiss this petition is dealt with in this decision and order.
J.’s placement has also been punctuated by three extraordinary requests initiated by C. H., his foster mother (hereinafter foster mother) since February 1990.
THE OCTOBER 21, 1993 ORDER TO SHOW CAUSE
The foster mother brought on an order to show cause (OSC) returnable December 7, 1993 on the underlying neglect petition. It requested that respondent mother be denied unsupervised visitation with J. until she had successfully undertaken training in providing care for J., and had identified an accessible hospital that could minister to him should a bleeding crisis occur while he was with her.
After extensive colloquy on the record and protracted discussions in the robing room the OSC was withdrawn. The withdrawal was predicated on CSS’s representation that no overnight or unsupervised visitation would be permitted unless and until respondent mother had completed the requisite training, and identified a hospital facility that could provide emergency care similar to that available at a Center, and that any request to change the status quo would be made by written application on notice.
THE APRIL 22, 1993 ORDER TO SHOW CAUSE
On April 22, 1993 the foster mother moved, also on the underlying neglect petition, by OSC returnable April 29, 1993 for an order directing CSS to file a petition to terminate parental rights pursuant to Family Court Act § 1055 (d).
The requested relief was opposed by respondent mother and CSS, and supported by the Law Guardian. On July 22, 1993 after consideration of the papers submitted, CSS was orally directed to file a termination proceeding. On August 17, 1993 *565 the court signed an order embodying that direction which was the subject of an unsuccessful appeal by CSS, Matter of Dale P. (150 Misc 2d 366 [Fam Ct, Queens County 1991], affd 189 AD2d 325 [2d Dept 1993], mod 84 NY2d 72).
Under constraint of that ruling, CSS filed what purported to be a petition for the commitment of an infant pursuant to section 384-b of the Social Services Law on October 21, 1993.
THE APRIL 25,1994 MOTION TO DISMISS
The inadequacy of that petition engendered respondent mother’s counsel to file a motion to dismiss returnable May 16, 1994. It contended that the petition failed to sufficiently particularize the allegations of the petition so as to alert the respondent to the specific allegations necessary to support the cause of action pleaded for permanent neglect.
It is most significant that CSS failed to file papers in opposition, suggesting either a law office failure, or a studied disregard for this court’s August 17, 1993 order.
Indeed, the Law Guardian’s papers in opposition to dismissal also remarked on the deficiencies in the termination proceedings, and suggested that CSS deliberately submitted an inadequate petition, a conclusion not without reason given CSS’s failure to respond to the motion to dismiss.
Although CSS would be in a seemingly untenable posture in opposing dismissal, the history of this case demonstrates that the positions taken by CSS are not necessarily related to the merits.
More importantly CSS should have made some submission. If she could not in good conscience oppose the motion, she was not foreclosed from other action. Logic, common sense and professionalism all dictate that CSS should have at least cross-moved for leave to amend the petition pursuant to CPLR 3025 (b).
The Law Guardian was not alone in noting the inadequacies of this petition.
The foster mother who had previously moved to intervene in the termination proceeding buttressed her May 2, 1994 cross motion (infra) on the shortcomings of this petition.
We will now examine the instant petition to ascertain how it complies with the requirements specified in Family Court Act § 614 and Social Services Law § 384-b.
Social Services Law § 384-b (3) (g) provides that "[a]n order *566 committing the guardianship and custody of a child pursuant to this section shall be granted only upon a finding that one or more of the grounds specified in subdivision four are based upon clear and convincing proof.”
Family Court Act § 614 governs originating a proceeding for commitment of guardianship and custody based on permanent neglect. Subdivision (1) (c) requires the petition to allege that the agency has made diligent efforts to encourage and strengthen the parental relationship and specify the efforts, or that such efforts would be detrimental to the best interests of the child and specifying the reasons therefor.
In paragraphs 7 and 8 of the petition, CSS alleges that there is reasonable cause to believe that respondent mother permanently neglected the child, notwithstanding the requirement for clear and convincing evidence contained in the statute.[1]
Social Services Law § 384-b (7) (a) defines a permanently neglected child as follows: "a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency’s diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child.”
An essential element that must be proved by clear and convincing evidence is that the agency has made diligent efforts to encourage and strengthen the parental relationship. It is notable that in paragraph 8 no claim is asserted that CSS made diligent efforts to encourage and strengthen the parental relationship.
*567 Paragraph 7 of the petition, while alluding to diligent efforts, fails entirely to specify the efforts made, or that such efforts would be detrimental to the best interests of the child while specifying the reasons therefor.
Since paragraph 8 fails to comply with the diligent efforts requirement it a fortiori fails to specify the efforts made, or that such efforts would be detrimental to the interest of the child while specifying the reasons therefor.[2]
It is beyond cavil that CSS has significant experience in the filing and the prosecution of termination proceedings. Indeed, if one were to compile the total number of such proceedings filed by the Commissioner over time, it would be numbered in the tens of thousands.
One, therefore, is constrained to speculate as to why CSS’s representative filed such a patently defective petition.
Might it be that he failed to read it, and note its deficiencies? Might it be he read it, and was not conversant with the requirements of the statute? Might it be that he read it, and was aware of its inadequacy, but reflecting a disaffection with this court’s August 17, 1993 order determined to sabotage that order by filing a document so vulnerable to dismissal?
A most interesting suggestion emanates from the Law Guardian. She suggests that a petition defective on its face should be viewed as no petition at all, and that the foster mother be authorized to file a termination proceeding.
One needn’t ascertain CSS’s motive, because an ascertainment of the reason is not wholly necessary to the determination of the motion.
Since the petition is deficient on its face, the motion to dismiss is granted unless CSS files, within 10 days of receipt of this decision and order, a termination proceeding meeting the requirements of Family Court Act § 614 and Social Services Law § 384-b. In the event that CSS does not, the foster mother is given leave to file a termination proceeding.
THE FOSTER MOTHER’S MARCH 21, 1994 MOTION TO INTERVENE AND MAY 2, 1994 CROSS MOTION TO PROSECUTE
The foster mother moved on March 21, 1994 to intervene *568 expecting intervention to be limited to the dispositional phase of the proceeding pursuant to Social Services Law § 383. This posture was modified when she had an opportunity to peruse the instant petition.
In her May 2, 1994 cross motion she noted that not only was the termination petition defective, but that CSS had failed to oppose the motion to dismiss it. Nonetheless CSS vehemently opposed the foster mother’s motions by affirmation dated May 12, 1994.
The foster mother argued that given these highly unusual circumstances CSS’s commitment to the successful prosecution of this petition was suspect. She requested leave to file an amended petition and prosecute the petition.
THE FOSTER MOTHER MAY INTERVENE AT THE FACT FINDING
There are three distinct but interrelated reasons for allowing the foster mother leave to intervene at the fact-finding level. They are: (1) the court’s inherent discretion; (2) intervention pursuant to CPLR 1012; and (3) leave to file a petition pursuant to Family Court Act § 1055 (d).
Intervention may be granted at fact finding as a matter of judicial discretion (Matter of Laura Ann, 82 Misc 2d 776 [Fam Ct, Rockland County 1975]; contra, Albany County Dept. of Social Servs. v Earl M., 143 Misc 2d 931 [Fam Ct, Albany County 1989]).
In Matter of Stevens (51 AD2d 877 [4th Dept 1976]) intervention was permitted in a termination proceeding. CSS contends that the case should be distinguished because it was based on abandonment. The court disagrees.
Although Family Court Act § 623 provides for a dispositional hearing when termination is based on permanent neglect, and silent when the finding is based on abandonment, the distinction is illusory.
Since the Family Court Act only deals with permanent neglect, it could not refer to the procedure where abandonment is pleaded. Both causes of action entail two separate inquiries: the first is whether the parent has failed to act in a particular manner. The second is what disposition will be in the best interests of the child.
It is common practice to have "best interests” addressed in a separate hearing once a finding of abandonment is made *569 because the Law Guardian requests an adjournment to obtain further information. On a functional level the adjourned hearing is indistinguishable from a Family Court Act § 623 dispositional hearing.
It is also common practice where permanent neglect is proved to have "best interests” addressed in a dispositional hearing which follows the fact-finding hearing without any interruption whatsoever. This reinforces the perception that what is involved is a distinction without a difference.
The foster mother should be permitted to intervene, as a corollary to CSS’s ineptitude, in order to protect her rights. Her entitlement to intervene if not, arguendo, vouchsafed by Social Services Law § 383, would flow from CPLR 1012. CPLR 1012 (a) affords her this right because, as noted in Tyrone G. v Fifi N. (189 AD2d 8, 16 [1st Dept 1993]), "representation of [her] interests by the parties to the suit 'is or may be inadequate and the person is or may be bound by the [result].’ ”
CSS drafted a defective petition, failed to oppose the motion to dismiss it, and even more egregiously, failed to move to amend it.
Under these circumstances the court finds that representation of the foster mother’s interests by CSS would be inadequate.
Respondent mother somewhat disingenuously claims that since no issue of custody exists at fact finding, no intervention is possible. Nor as respondent mother suggests would granting the foster mother leave to prosecute constitute a back door grant of intervenor status. Her point lacks merit in the context of this proceeding.
I have been constrained to dismiss this petition conditionally, and if CSS prosecuted an amended petition as zealously and effectively (sic) as it drafted this one, it is a foregone conclusion that the custody issue would not be reached but for the wrong reasons.
If CSS files a properly pleaded amended petition the foster mother may intervene, as a matter of the court’s discretion, in order to protect rights that otherwise would be inadequately represented, and because she would be in the same position if the petition were unqualifiedly dismissed, and pursuant to Family Court Act § 1055 she filed her own petition.
Leave to intervene presupposes that CSS will draft an appropriate petition.
If CSS fails to file a properly pleaded petition and the *570 foster mother brings her own petition, CSS shall not be responsible for her legal fees because she is financially able to afford counsel. The Second Department’s affirmance of Dale P. (189 AD2d 325, supra) exhaustively discussed Judge DePhillip’s conditional direction that CSS afford the foster mother legal representation in filing and prosecuting an adoption proceeding.
It relied heavily on Matter of Enrique R. (126 AD2d 169 [1st Dept 1987]) which held that Family Court’s authority did not extend to directing that legal services be provided out of public funds in the absence of statutory authority.
The statutory authority for the assignment of counsel pursuant to Family Court Act § 262 (a) (iv) to a foster parent who originates a termination of parental rights petition pursuant to Social Services Law § 384-b (3) (b) is specifically limited to circumstances where she is financially unable to afford counsel.
In this matter the foster mother has been represented by retained counsel. Accordingly that branch of the foster mother’s cross motion seeking that CSS provide her with payment for legal representation is denied.
If the foster mother were financially unable to afford counsel, a direction to hold CSS responsible for her counsel fees would not be inhibited by the Court of Appeals modification of Dale P. (84 NY2d 72, supra).
In Dale P. (supra, at 82), Judge Bellacosa noted that "[t]he conditional portion of the Family Court order * * * dealing with provision of legal services to Mary H. if the Commissioner fails to initiate termination proceedings as directed by the Family Court, is unnecessary to resolve in this case.”
He further noted that "[t]he Commissioner made no record of any cognizable potential conflict of interest or authority necessitating or justifying the grant of this conditional, fiscally significant relief.” (Supra, at 82.)
Implicit in Judge Bellacosa’s decision is the belief that the primary termination proceeding relief ordered by Family Court would be commenced, in legally sufficient form, and prosecuted with zeal and professionalism by CSS.
What has occurred in this matter is factually distinguishable because CSS filed a facially defective petition.

. Family Court Act § 1055 (d) authorizes the court to order CSS to institute a proceeding to terminate parental rights "if the court finds reasonable cause to believe that grounds therefor exist.”
It would appear that CSS confuses "reasonable cause”, the standard of proof which must be met for the court to order CSS, pursuant to Family Court Act § 1055 (d), to file a petition to terminate parental rights with "clear and convincing” evidence, the standard of proof necessary to prevail in a termination proceeding. The court’s finding that reasonable cause exists necessarily assumes that the grounds that exist can be proved by clear and convincing proof.

. It is difficult to discern the reason for the inclusion of paragraph 8. It is identical to paragraph 7 except for its omission of the phrase "notwithstanding petitioner’s diligent efforts”. This omission renders it even more defective.