OPINION OF THE COURf
Kerry R. Trainor, J.
Ms. B. was due in court at 11:00 a.m. on May 28, 1996 in response to this petition for violation of a prior order of disposition in a neglect proceeding. She failed to appear. This violation petition grows out of a neglect order that was entered after she gave birth to a baby who tested positive for cocaine and syphilis in 1993.
Counsel for the Suffolk County Department of Social Services (hereinafter referred to as DSS) indicated an intent to serve her with a "Notice of Inquest” and has asked for a "Warrant of Arrest”. The court has reserved decision on the application for a warrant and is awaiting documentation that the Commissioner has complied with an order issued during the current proceeding. Counsel for DSS has requested this decision and order be reduced to writing.
This respondent is receiving social service entitlements from the same Commissioner who is now requesting a warrant for her arrest. In the past, this court has dealt with the same problem. On March 11, 1996, in Matter of Shavon M. v Jeanette M. (NYLJ, Mar. 22, 1996, at 33, col 6), there was no objection from counsel for DSS when this court issued a "Warrant of Arrest” only after receiving assurances that entitlements would stop, with the lodging of the warrant. In that case, I determined that this step was necessary in order to avoid an absurdity. Specifically this court held (at 33, col 6): "On the one hand, the government, through the Child Protective Services (C.P.S.) branch of Social Services is seeking to find her and bring her to court. On the other hand, the government through the same Suffolk County Department of Social Services may be subsidizing her flight. This is senseless.”
The circumstances of the case now before the court are very similar and the court’s reasoning must remain the same. A similar order was also issued in a number of other cases. For some time I was under the impression that this direction was being followed. Now, the Assistant County Attorney who is lead counsel for DSS and who has no responsibilities to any *849 other Suffolk County agencies, has expressed concerns that such an order may be intruding into the Commissioner of Social Services’ prerogatives and violate the respondent/ recipient’s rights under the New York State Department of Social Services regulations. I have reviewed the regulations and reached this ruling in an effort to take realistic legal steps to obtain Ms. B.’s appearance in court, while insuring compliance with both the recipient’s and DSS’ rights and obligations as stated in the regulations.
This court is concerned that a "Warrant of Arrest” alone will not result in her prompt appearance before this court. This court cannot ignore this respondent’s past drug problems, past birthing of a cocaine child, her proven ability to ignore a prior warrant issued by this court, past court orders and DSS’ new report that she is now expecting another child. Every available avenue must be pursued by the Commissioner of Social Services, as well as the court. A detailed discussion of this respondent, her past actions, and her present opportunities to avoid a "Warrant of Arrest” will be helpful in explaining the necessity for the court’s current action.
Court records indicate that after she gave birth to the child who was positive for cocaine and syphilis in 1993, DSS summoned her to Family Court. She failed to appear and DSS obtained custody after an inquest on December 23, 1993. On January 4, 1994, she failed to appear again and I issued a warrant for her arrest. This warrant remained outstanding until May 16, 1994. At that time, she had been arrested for a violation of parole resulting from a felony conviction. While being detained and before being returned to prison, she was brought to Family Court and this court’s warrant that had been outstanding for more than five months was recalled.
Eventually, a new order was entered in which she was obligated to seek rehabilitation. The records are not clear as to when she completed her prison term. Her record of nonappearance in this court commenced again on May 2, 1996, when she was due in court on this petition alleging violations of the prior order of disposition in the above neglect proceeding. She is accused, among other things, of failing to obtain rehabilitation services. She did appear on May 15, 1996. On May 21, she again failed to appear, but someone claiming to be her called and complained of a leg problem. She was again due in court today, May 28, 1996, at 11:00 a.m.
The clerk has advised the court on the record that at approximately 11:00 a.m. on May 28, 1.996, a person identifying *850 herself as Ms. B. called the Part and indicated she would not be able to appear because she had made a doctor’s appointment for 11:15 a.m. The clerk told her that she should come to court first and then go to the doctor’s office. The caller then indicated she had no means of transportation. By the close of business on May 28, 1996, Ms. B. had not appeared in court.
The child who was born in 1993 is still in foster care because I have granted every application that DSS has made to extend the foster care for this child. The court has ongoing concerns for this child’s well-being and stability, I would like to have this current litigation go forward as quickly as possible so that there is some hope for permanent solutions and a permanent lifestyle for this child.
The Assistant County Attorney representing DSS has indicated an intent to serve a notice of inquest and has applied for a warrant for her arrest. Ms. B.’s attorney, on the other hand, has requested an adjournment so that he could attempt to have her appear before the court. Neither proposal standing by itself is sufficient. If the court simply issues a "Warrant of Arrest”, one of two probable results will most likely occur. Either this "Warrant of Arrest” growing out of a civil proceeding will join the tens of thousands of other such warrants that are already lodged in the law enforcement computers throughout the State or, it will actually be executed by police officers. Quite simply, the court is concerned that Ms. B. will be as successful in evading a new warrant as she was in evading the one I issued for her in 1994. It could simply remain active for many months until some other event occurs. This is not to be construed as a criticism of law enforcement authorities, who must attempt to execute the warrant. As will be discussed in detail below, there are circumstances that exist in Suffolk County that make it especially difficult to locate someone who is receiving money from DSS while they’re hiding.
If the second alternative, execution of the warrant, occurs, then this pregnant respondent could be exposed to the obvious dangers that surround arrest and detention procedures.
Both alternatives should be avoided if possible. With the cooperation of the Commissioner of DSS this result can occur.
Because of the way in which social service entitlements can be distributed in Suffolk County, the likelihood of success with a "Warrant of Arrest” alone seems especially poor. This makes the Commissioner of Social Services’ cooperation especially important to the court.
The problem with this financial distribution system that is employed by the Commissioner of DSS is that this recipient *851 does not have to receive a check at her home. Ms. B., like other recipients, can receive her money by simply going to an ATM machine at a banking location of her choice at any time she wishes within a given two-week period. All she has to do is enter her PIN number and her cash entitlement is provided from the machine. Obviously, it’s unrealistic to expect law enforcement to find that machine and hope for her arrival.
As a result, there is no set time or place at which law enforcement officials would have a reasonable likelihood of finding her. There is no need for her to seek employment or financial help from others because all her economic needs are being met by the agency that has asked for the warrant.
Neither in this nor any other case where the court has been concerned with this problem of nearly invisible access to funds has any counsel for DSS disputed the existence of this system. This opinion is not intended as a criticism of its existence. This system has apparently been adopted in Suffolk County as a necessary means of inhibiting theft. Unfortunately, in a case such as Ms. B.’s it makes it too simple for the respondent/ recipient to ignore court directives and remain hidden.
The court has pointed out these problems together with Ms. B.’s past and ongoing success at concealing herself with the Social Services funding. I have requested the Commissioner, through counsel, to provide help to the court by making reasonable efforts that are within his lawful power to encourage Ms. B. to end her defiance, submit again to the jurisdiction of the court, and let this pending case go forward. The answer is not service of a notice of inquest, or mere issuance of a warrant. Ms. B. has ignored both in the past. I asked the Commissioner to send her notices pursuant to the Social Services Department regulations that she must appear at Family Court for a "face-to-face” interview with one of his social workers or the Commissioner may stop sending her cash, paying her rent and providing her with food stamps. The Commissioner, through counsel, has said no to these requests.
Lead counsel for the Commissioner has indicated, on the record, that although he is not familiar with the facts of Ms. B.’s case, any such request of the Commissioner in any case must be rejected as an improper intrusion into the Commissioner’s exclusive jurisdiction.
The court disagrees with the proposition that the Commissioner is immune from court orders to carry out lawful acts to assist the court. The court must be permitted to fashion lawful discretionary remedies that meet the needs of the particular *852 facts, including past actions, that relate to a particular respondent, the now foster child she’s neglected, and future harm that could arise from her stealth in avoiding the court while she’s accused of refusing drug rehabilitation.
Since the Commissioner has refused these requests, the court must order the Commissioner to carry out acts now that are within his lawful authority. These events must occur anyway in the near future even without a court order.
In entering this order in this pending case, the court is not unreasonably intruding into the Commissioner’s prerogatives. Rather, it is fulfilling a statutory duty pursuant to Family Court Act § 255 which states:
"§ 255. Cooperation of officials and organizations "It is hereby made the duty of, and the family court or a judge thereof may order, any state, county, municipal and school district officer and employee to render such assistance and cooperation as shall be within his legal authority, as may be required, to further the objects of this act [portions relating to school districts have been deleted]. It is hereby made the duty of and the family court or judge thereof may order, any agency or other institution to render such information, assistance and cooperation as shall be within its legal authority concerning a child who is or shall be under its care, treatment, supervision or custody as may be required to further the objects of this act. The court is authorized to seek the cooperation of, and may use, within its authorized appropriation therefor, the services of all societies or organizations, public or private, having for their object the protection or aid of children or families, including family counselling services, to the end that the court may be assisted in every reasonable way to give the children and families within its jurisdiction such care, protection and assistance as will best enhance their welfare.”
Under all of these circumstances, the court must at this time reserve decision in the Commissioner’s application for a "Warrant of Arrest”. Standing by itself, the granting of Commissioner Wingate’s application for a warrant would do little to assist the court in securing Ms. B.’s appearance. Instead the only result would be that Commissioner Wingate would no longer have to be concerned with this difficult problem of getting Ms. B. to court. The problem would simply have been passed off to the various law enforcement agencies. They would have to extend their energies and expose their employees to potential dangers and liabilities. This is not the proper solution when there is a more sensible route that Commissioner Wingate and DSS could pursue.
*853 This matter is adjourned at the respondent’s counsel’s request and over the objection of DSS until Tuesday, June 11, 1996. In the interim and in conjunction with granting this adjournment the court with the consent of respondent’s counsel and pursuant to Family Court Act § 255 orders Commissioner Wingate and DSS take necessary lawful action in order to encourage Ms. B. to come to court without having to be arrested.
The lawful assistance that is being ordered is set forth in the Department of Social Services regulations, 18 NYCRR 351.20, 351.21 and 351.22. These uniform State-wide regulations mandate that the Suffolk County Commissioner of Social Services requires the appearance of all recipients of entitlements at a "face-to-face” meeting. It appears that these "face-to-face” meetings are required to verify what is usually rather elementary information, such as whether or not the recipient is alive and living within the jurisdiction. An effort to gather this elementary information has become very important in this case since the Commissioner’s representative in court was unable to indicate when and where an employee of the Department of Social Services had last seen Ms. B. Instead, this representative simply asked for a warrant. The court is entitled to have some information regarding Ms. B. being alive in this jurisdiction before ordering police officers to go to her last known residence and risk a confrontation with others as they attempt to effectuate her arrest. The fact that someone called today or even if proof were presented that someone had used her PIN number to get money from the ATM machine tells the court nothing. It does not say Ms. B. is alive and well in Suffolk County.
Under these circumstances, the Commissioner is requested to send Ms. B. a notice requiring a "face-to-face” interview for recertification to occur on the second floor of this Family Court building at 9:00 a.m. on any weekday between now and June 11, 1996.
Under DSS regulations, a "face-to-face” interview is the first of two steps that are necessary to close Ms. B.’s case and thereby stop entitlement payments to her. In the past, she has ignored both the summons and warrant mandating her appearance in court. She has proven her ability to remain hidden for months on end. Hopefully, the possibility of this financial problem will encourage her to appear in court immediately.
Specifically 18 NYCRR 351.21 (b) (1) and (2) state that DSS has the obligation to meet with its recipients at least once *854 every three months in cases of aid to dependent children when eligibility is based on unemployment of a parent and at least once every six months when eligibility is not based on the unemployment of the parent and in cases of home relief. While setting the requirement of at least one meeting during the stated time periods, it is clear the Commissioner can require more. Section 351.21 (a) states, "[c]ontacts with or concerning recipients shall be made as frequently as individual need, change in circumstances or the proper administration of assistance or care may require.” The change in circumstance in this case is obvious, the recipient is pregnant, and allegedly missing. It is time to send her a notice for a "face-to-face” interview (the term "face-to-face” interview is defined in 18 NYCRR 351.20 [b] [3] [i-vii]). The regulations do not state a restriction on where the "face-to-face” interview must occur. There is no reason stated that would prohibit the "face-to-face” from occurring at this courthouse at the same time as the required court appearance. As a practical matter, it should create no difficulty for DSS since they have social workers from their various subdivisions in this building during business hours.
If Ms. B. appears on or before June 11, 1996, the "face-to-face” can be conducted. Her case can be added to the court calendar. She can also proceed to the courtroom where this litigation will go forward.
If Ms. B. fails to appear on or before June 11, then the Commissioner of DSS is ordered to send Ms. B. a 10-day notice of proposed discontinuance of assistance because of her failure to appear for the "face-to-face”. This procedure is described in section 351.22 (b) (1) and (2):
"(b) Failure to appear at the face-to-face interviews. If a recipient fails to appear without good cause, the social services official shall send a 10-day notice of proposed discontinuance of assistance on a form required by the department.
"(1) If the recipient does not respond within this 10-day period, the case shall be closed as of the end of the 10-day period. Any request for assistance made after a case is closed shall be considered a new application.
"(2) If the recipient appears for a face-to-face interview during the 10-day notice period, an interview shall be arranged. If it is determined that he is eligible for continued assistance, the 10-day notice of proposed discontinuance shall be nullified.”
Under the circumstances of this case, this notice should contain the usual language and in addition, indicate that she *855 must appear at the Suffolk County Family Court at 9:00 a.m. on any working day (Monday-Friday) for her "face-to-face” interview or her entitlement will cease and her case will be closed. In fairness to Ms. B. the court recommends that she be given 10 working days’ notice. This means that if she does not appear by Tuesday, June 25, 1996, her case will be closed; her entitlements will cease.
Once the Commissioner has sent these notices to Ms. B., his counsel is encouraged to apply to this court to reinstate the matter to the calendar immediately to demonstrate that the Commissioner has carried out reasonable efforts to assist the court in obtaining her appearance. Of course, this two-step process could begin today. Upon notice to the respondent’s attorney, this matter, together with the County Attorney’s application for a "Warrant of Arrest” will be promptly re-calendared upon representation of documentation that both notices have been sent.
In open court, the framework of this proposed order was presented to all parties. In the end the respondent’s attorney consented to these procedures being followed, but the DSS representative indicated the Commissioner would not honor the request.
The execution of a "Warrant of Arrest” is a dangerous and expensive procedure for the agencies that are ordered to do so by the court. Absent voluntary cooperation the court has no choice but to order DSS to pursue available reasonable efforts before applying for a warrant that could have such a serious impact on other agencies and the respondent.
If this step were ignored, then the court today would have done nothing more than caused a "Warrant of Arrest” to be placed in a State-wide computer for a person with a proven ability to disappear and a very common name. At best, this would mandate at least several police officers to attempt to physically detain this respondent or someone with the same name and bring her to court. I am not prepared to do this in this case when it is so clear that mailing one and at most, two notices are likely to insure her appearance.
The Commissioner of DSS is demanding that the court roll out one of its most powerful weapons of judicial enforcement, the "Warrant of Arrest”. At the same time he is refusing to voluntarily send one of the least physically intrusive and most effective messages, a notice in the mail that in effect says be in court when you are supposed to be there or the money stops.
This court recognizes that Family Court Act § 255 does not give the court unfettered authority to direct the Commissioner *856 of Social Services to terminate a public assistance recipient’s benefits. A review of appellate decisions indicates that when the Family Court employs this statute, it must be used to assist in efforts to meet the needs of children within the court’s jurisdiction; certainly this applies to Markeyta G. who has been in foster care for years. Trial courts have been discouraged from attempts to compel a Commissioner of Social Services to carry out highly discretionary actions that do not have to normally occur as part of the DSS’ legal obligations (see, e.g., Matter of Enrique R., 126 AD2d 169 [1st Dept 1987] [inappropriate for Family Court to order DSS to commence CPLR article 78 proceeding]; Matter of Suffolk County Dept, of Social Servs. [Anthony G.[ v Anthony G., 222 AD2d 593 [2d Dept 1995] [inappropriate to order Commissioner to transport child from West Indies to New York]). This court has not requested nor is it ordering the Commissioner to carry out acts that are beyond its legal obligations that are in the normal course of business.
The . Family Court also cannot order or become a vehicle to permit the Commissioner to violate DSS’ regulations or legal obligations to any recipient or the community. This point is made clear by Matter of Walker v Buscaglia (71 AD2d 315 [4th Dept 1979]). Although it’s not clear as to whether Family Court Act § 255 or some other provision was used as the purported authority, this Fourth Department decision indicates that the Family Court Judge lacks the authority to terminate public assistance benefits. It must be done by the Commissioner only after proper notice is provided to the recipient pursuant to DSS regulations.
In essence, this latter decision gives the impression that the Family Court was being employed as a means of getting around Social Services Department regulations. This court’s decision is radically different; in order to protect this recipient, and at the same time to protect the child victim, this court is ordering compliance with the regulations.
This court has requested and is now ordering the Commissioner of Social Services to carry out tasks that are legally required in the usual course of business pursuant to the request. This court requested and is now ordering that the Commissioner provide the legally required notifications to the recipient / respondent. Under this court’s order, the Commissioner will have to clearly advise the respondent to appear for the "face-to-face” interview or risk being decertified by the Commissioner. This court is ordering the Commissioner to fulfill the legal obligation to have his representative meet with the recipient / respondent.
*857 All the court is ordering is that the Commissioner send the mandatory notices now rather than later and that the "face-to-face” interview be set for here, Family Court, rather than somewhere else. Once this order has been complied with, the matter may be recalendared for a ruling on the Commissioner’s application for a "Warrant of Arrest”. Absent such re-calendaring the matter is adjourned until June 11, 1996.